**UNITED STATES of America,
Plaintiff,**

v.

**Andrew JACKSON, Defendant.**

**No. 75-CR-797.**

United States District Court,
E. D. New York.

Nov. 20, 1975.

David G. Trager, U. S. Atty., for the Eastern District of New York, Brooklyn, N. Y., for plaintiff; Paul B. Bergman, Robert F. Katzberg, Asst. U. S. Attys., of counsel.

Robert Bloom, New York City, for defendant.

## MEMORANDUM AND ORDER

WEINSTEIN, District Judge.

Defendant, accused of robbing a bank at gunpoint, has made pretrial motions for advance rulings (1) that a recent state felony conviction for assault cannot be used to impeach him in the event that he takes the stand and (2) that evidence that he used a false name on being arrested in Georgia shortly after the robbery is inadmissible because its probative value is outweighed by the risk of unfair prejudice. The motions are granted on conditions designed to prevent the defendant from gaining any unfair advantage from exclusion.

## I. PRIOR CONVICTION

Impeaching witnesses by prior convictions is governed by Rule 609 of the Federal Rules of Evidence. Under Rule 609(a), Jackson's felony conviction for a crime not involving dishonesty or false statement is admissible only if the court determines that its probative value with respect to defendant's credibility outweighs prejudice to him. The Rule provides:

"Rule 609.

Impeachment by Evidence of Conviction of Crime

(a) General rule. For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime shall be admitted if elicited from him or established by public record during cross-examination but only if the crime (1) was punishable by death or imprisonment in excess of one year under the law under which he was convicted, and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the de-

fendant, or (2) involved dishonesty or false statement, regardless of the punishment."

*Legislative History of Rule 609*

The Rule, in its present form, constitutes a carefully considered legislative compromise growing out of a series of rigorous debates in committees and on the floor of both Houses of Congress. The legislative history affords important guidelines for the exercise of judicial discretion as contemplated by paragraph (1) of the Rule. For similar indications of changes in direction prior to the Congressional debates compare the various drafts of the Advisory Committee on Rules of Evidence. 46 F.R.D. 295 (1969); 51 F.R.D. 391 (1971); 56 F.R. D. 269 (1973).

Rule 609(a), as promulgated by the Supreme Court and transmitted to Congress, followed the traditional practice of permitting free use of felony convictions to impeach the credibility of any witness, including a criminal defendant. The Supreme Court's rule provided:

"Rule 609.

Impeachment by Evidence of
Conviction of Crime

(a) General rule. For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime is admissible but only if the crime (1) was punishable by death or imprisonment in excess of one year under the law under which he was convicted or (2) involved dishonesty or false statement regardless of the punishment."

In hearings before the House Subcommittee considering the proposed Rules of Evidence, this formulation met stiff opposition from members and witnesses who believed that the use of prior convictions tends to deter defendants from testifying and to create unfair prejudice when they do. Hearings Before the Special Subcommittee on Reform of Federal Criminal Laws of the Committee on the Judiciary, House of Representatives, 93d Cong., 1st Sess., on Proposed Rules of Evidence, Serial No. 2, pp. 29–30, 68–69, 105–114, 251–252 (1973). The Subcommittee amended the Rule to accord a defendant some measure of protection in the trial court's discretion. Its proposal read as follows:

"For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime is admissible only if the crime (1) was punishable by death or imprisonment in excess of one year, unless the court determines that the danger of unfair prejudice outweighs the probative value of the evidence of the conviction, or (2) involved dishonesty or false statement."

Report of Committee on the Judiciary House of Representatives, 93rd Cong., 1st Sess., No. 93–650, p. 11 (1973).

The House Judiciary Committee was not, however, satisfied that the Subcommittee's amendment adequately protected an accused who wished to testify. Consequently, it amended Rule 609(a) to read:

"(a) General rule.—For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime is admissible only if the crime involved dishonesty or false statement."

Report of Committee on the Judiciary, House of Representatives, 93rd Cong., 1st Sess., No. 93–650, p. 11 (1973).

The limitations imposed on the use of prior convictions to impeach by the Judiciary Committee generated an extensive debate on the floor of the House. *See* Congressional Record, January 30, 1974, H. 310, 315, 551–553; *Id.* Feb. 6, 1974 at H. 554–557.

Opponents of the Committee's proposed restrictions argued that any past demonstrated willingness to engage in conduct in disregard of accepted legal norms is highly probative with regard to credibility and therefore requisite to a just and accurate assessment by the jury of a witness' testimony; that it was not fair to permit a defense witness who has

been convicted of a felony to appear as an unblemished citizen; and that a rule restricting impeachment to crimes involving dishonesty or false statement was unpredictable and would result in uneven, discriminatory treatment of criminal defendants. *Ibid.* (Remarks of Congressman Hogan).

Proponents of the restrictions argued that the conventional free use of convictions conflicts with the generally accepted principle that a defendant not be convicted because he is a person of bad character; that a large proportion of miscarriages of justice occur because a defendant is prejudiced by proof of his prior conviction or deterred from relating his side of the story; and that the use of convictions to impeach necessarily discriminates between defendants who take the stand and those who do not. *Ibid.* (Remarks of Congressman Dennis). After considering an amendment which would have substituted the Subcommittee's version, the House voted in favor of the restrictive practice endorsed by the full Judiciary Committee. *Id.* at H. 557.

Rule 609 also proved to be highly controversial in the Senate. It was extensively discussed at Judiciary Committee hearings. *See* Hearings Before Comm. on the Judiciary, United States Cong., 93rd Cong., 2d Sess. on Federal Rules of Evidence 12–20, 118, 277–279, 314–316 (1974).

The Senate Committee proposed a compromise for Rule 609(a) limiting impeachment of the defendant to crimes involving false statement or dishonesty, but permitting free use of felonies for all other witnesses. Report, Comm. on the Judiciary of the Senate, 93rd Cong., 2d Sess., No. 93–1277 on Federal Rules of Evidence, p. 15 (1974). There followed considerable discussion on the floor of the Senate which resulted in the adoption of an amendment which removed the restrictions on impeachment of the accused, thus adopting a formulation equivalent to the one promulgated by the Supreme Court. Cong.Rec.S

19909–19912, 19915 (daily ed. Nov. 22, 1974).

The version of Rule 609(a) that was ultimately enacted was worked out by the Committee on Conference as a compromise between the House and Senate formulations. Conference Report, H. Rep.No.93–1597, reprinted at Congressional Record, H. 11920–11931 (daily ed. Dec. 14, 1974). In its report, the Conference Committee justified its compromise as follows:

"The admission of prior convictions involving dishonesty and false statement is not within the discretion of the Court. Such convictions are peculiarly probative of credibility and, under this rule, are always to be admitted. Thus, judicial discretion granted with respect to the admissibility of other prior convictions is not applicable to those involving dishonesty or false statement.

"With regard to the discretionary standard established by paragraph (1) of rule 609(a), the Conference determined that the prejudicial effect to be weighed against the probative value of the conviction is specifically the prejudicial effect *to the defendant.* The danger of prejudice to a witness other than the defendant (such as injury to the witness's reputation in his community) was considered and rejected by the Conference as an element to be weighed in determining admissibility. It was the judgment of the Conference that the danger of prejudice to a nondefendant witness is outweighed by the need for the trier of fact to have as much relevant evidence on the issue of credibility as possible. Such evidence should only be excluded where it presents a danger of improperly influencing the outcome of the trial by persuading the trier of fact to convict the defendant on the basis of his prior record."

*Ibid.* (emphasis in original).

In its present form, Rule 609(a) codifies a trend of federal cases epitomized

by *Luck v. United States,* 121 U.S.App. D.C. 151, 348 F.2d 763 (1965), which recognized the trial courts' obligation to exercise discretion in excluding evidence of convictions. *See, e. g., United States v. Johnson,* 412 F.2d 753, 756 (1st Cir. 1969), *cert. denied,* 397 U.S. 944, 90 S. Ct. 959, 25 L.Ed.2d 124 (1970); *United States v. Palumbo,* 401 F.2d 270, 273 (2d Cir. 1968), *cert. denied,* 394 U.S. 947, 89 S.Ct. 1281, 22 L.Ed.2d 480 (1969); *Wounick v. Hysmith,* 423 F.2d 873, 875 (3d Cir. 1970); *United States v. Hildreth,* 387 F.2d 328, 329 (4th Cir. 1967); *United States v. Gloria,* 494 F.2d 477, 481 (5th Cir. 1974); *United States v. DiVarco,* 484 F.2d 670, 677 (7th Cir.), *cert. denied,* 415 U.S. 916, 94 S.Ct. 1412, 39 L.Ed.2d 470 (1973); *Sears v. United States,* 490 F.2d 150, 154 (8th Cir. 1974); *United States v. Villegas,* 487 F.2d 882, 883 (9th Cir. 1973); *Butler v. United States,* 408 F.2d 1103 (10th Cir. 1969). The *Luck* doctrine also served as the prototype for the early compromise proposals in the House. *See* Hearings Before the Special Subcommittee on Reform of Federal Criminal Laws of the Committee on the Judiciary, House of Representatives, 93rd Cong., 1st Sess., on Proposed Rules of Evidence, Serial No. 2, pp. 29–30, 231–232 (1973).

*Application of the Rule*

It is apparent that, in its compromise form, the Rule necessarily embodies both the policy of encouraging defendants to testify by protecting them against unfair prejudice and the policy of protecting the government's case against unfair misrepresentation of an accused's non-criminality. It is incumbent upon the courts, in administering Rule 609(a), to reconcile these competing goals to the extent possible.

In order fully to effectuate the policy of encouraging defendants to testify, trial courts should rule on the admissibility of prior crimes to impeach as soon as possible after the issue has been raised. *Jones v. United States,* 131 U.S.App.D.C. 88, 402 F.2d 639, 643 (1968). *Cf. United States v. Crisona,* 416 F.2d 107, 117 (2d Cir. 1969), *cert. denied,* 397 U.S. 961, 90 S.Ct. 993, 25 L. Ed.2d 253 (1970); *United States v. Hart,* 407 F.2d 1087, 1088–1089 (2d Cir. 1969). It is only after the admissibility of a conviction has been ruled on that defense counsel can make an informed decision whether to put his or her client on the stand. In addition, the court's ruling may have a significant impact on opening statements and the questioning of witnesses. It is, therefore, appropriate for the court to rule on defendant's motion now even though it is not possible to make a completely accurate assessment of the probative value of his recent conviction in the absence of an evaluation of the evidence that will be produced at trial.

The general outlines of the proof have emerged in pretrial conferences. There appears to be no doubt that the robbery took place. Surveillance photographs and witnesses apparently will establish that a male closely resembling defendant participated. There will also probably be testimony by at least one co-conspirator that defendant helped obtain one of the vehicles used in the crime. At least one of the possible government witnesses apparently also has a record of assaults. This information affords a sufficient basis for disposition of defendant's motion.

Considered in the abstract, prior assaultive conduct would seem to have little bearing on the likelihood that one will tell the truth. At the same time, the knowledge that the defendant is a recently convicted felon might have an unduly significant impact on the jury's determination of whether the defendant committed an armed bank robbery even though the evidence would not be admissible for that purpose. *See* Federal Rules of Evidence, Rule 404(b). The availability of surveillance photographs and some identification testimony ensures that the case will not come down to a simple test of the credibility of two witnesses—the co-conspirator and the defendant. The government's case, therefore, will not necessarily hinge on its

ability to destroy the defendant's credibility. Accordingly, defendant's motion to exclude his state court conviction is granted.

The court foresees, however, two possible trial developments which will tip the balance in favor of admitting the assault conviction. The first situation would be one in which the defendant, either through direct testimony or by implication, conveys to the jury the false notion that he has never been in trouble with the law. Any such impression would accord the defendant an unfair trial advantage in direct contravention of the spirit of Rule 609(a). It might cause the jury to overestimate the probability that the defendant is telling the, truth on the basis of a factually inaccurate assumption. In this context, proof of the recent felony conviction would nullify an erroneous hypothesis and thereby attain a probative significance on the issue of credibility sufficient to outweigh any prejudice to the defendant. Accordingly, it will be a condition of the court's order that the defendant refrain from suggesting a pristine background on direct. *Cf. Walder v. United States,* 347 U.S. 62, 74 S.Ct. 354, 98 L.Ed. 503 (1954); *Harris v. New York,* 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971); *Oregon v. Hass,* 420 U.S. 714, 95 S.Ct. 1215, 43 L.Ed.2d 570 (1975).

A second condition of the order is that defense counsel not present evidence through cross-examination or otherwise of any assault convictions of any of the government's witnesses without specific advance authorization from the court. This condition is designed to prevent the defendant from taking unfair advantage of the protection afforded him by Rule 609(a). Proof that the government's witnesses have criminal records may cause the jury to underestimate their credibility relative to the defendant's, again on the basis of incomplete or distorted information. With the evidence in such a posture, the probative value of defendant's assault conviction would outweigh any resulting prejudice.

This second condition guarantees that the impact of the loss of evidence will be fairly apportioned between the parties. It is not specifically authorized by the rule which is designed to protect defendants rather than the government from unfair prejudice. But it is amply supported by the sense of the legislative history and case law stressing the role of the court in balancing the competing interests. The use of a condition is further supported by Rule 102 of the Federal Rules of Evidence authorizing the court to interpret the Rules creatively so as to promote growth and development in the law of evidence in the interests of justice and reliable fact-finding. The Rule provides:

"Rule 102. Purpose and Construction

These rules shall be construed to secure fairness in administration, elimination of unjustifiable expense and delay, and promotion of growth and development of the law of evidence to the end that the truth may be ascertained and proceedings justly determined."

*See also* Rule 403, discussed below. Finally it should be noted that both conditions are predicated upon the court's pretrial finding that should they be breached the probative value of defendant's assault conviction will then outweigh the risk of prejudice within the meaning of Rule 609(a).

## II. MOTION TO EXCLUDE BECAUSE OF PREJUDICE

Defendant also seeks an advance ruling that evidence of his presence in Georgia and use of a false name is inadmissible under Rule 403 of the Federal Rules of Evidence because its probative value is outweighed by possible prejudice.

Rule 403 of the Federal Rules of Evidence grants discretion to exclude relevant evidence in the interest of preventing unfair prejudice to a party. It states:

"Rule 403.

### Exclusion of Relevant Evidence on Grounds of Prejudice, Confusion, or Waste of Time

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

Relevance, for purposes of the Rule, is defined by Rule 401 as a tendency to affect the trier's assessment of the probability that a factual proposition material to the outcome of the litigation is true. It reads:

"Rule 401.

### Definition of "Relevant Evidence"

"Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

Defendant's motion raises a complex Rule 403 question, rich in factual nuances. The bank robbery took place on August 23, 1971. Defendant was arrested in Georgia on November 7, 1971 when a local policeman thought defendant and his passengers were acting suspiciously in an area where an armed robbery had just taken place. Stopped for a traffic check, defendant had no license but did have false identification. The defendant was arrested for driving without a license. Georgia Stats. § 92A–421. Guns were found in the car. Subsequently, defendant escaped from the local jail.

 Presence in another jurisdiction is arguably proof of flight resulting from consciousness of guilt. *See, e. g., United States v. Malizia,* 503 F.2d 578, 582–583 (2d Cir. 1974), *cert. denied,* 420 U.S. 912, 95 S.Ct. 834, 42 L.Ed.2d 843 (1975); *United States v. Heitner,* 149 F.2d 105, 107 (2d Cir. 1945). Use of a false name increases the probative force of this circumstantial line of proof.

Because a person may leave a jurisdiction for any number of innocent reasons, courts are often reluctant to admit evidence of flight. *See, e. g., Wong Sun v. United States,* 371 U.S. 471, 483 n. 10, 83 S.Ct. 407, 415, 9 L.Ed.2d 441 (1963) ("[W]e have consistently doubted the probative value in criminal trials of evidence that the accused fled the scene of an actual or supposed crime."); *see also* McCormick, Evidence § 271 (Cleary ed. 1972).

The probability that defendant left New York to escape arrest for the bank robbery is somewhat reduced by the fact that at the time of his departure he had been indicted by the state for the assault which ultimately led to the conviction mentioned earlier in this opinion. It seems improbable, however, that if he were fleeing it was from the earlier assault since the indictment had been handed up in July, 1971, and the evidence will apparently show that the defendant remained in New York until just after the bank robbery in August.

The probative value of defendant's conduct is heightened by the posture of the government's proof. It is apparent that the surveillance photographs and the eye-witness testimony are not likely to make out a completely positive identification of defendant. The government, therefore, has legitimate need for corroborative evidence. On balance, then, the Georgia events have significant probative value.

The other side of the coin under Rule 403 is the possibility that defendant will be unfairly prejudiced. The Georgia patrolman's testimony will acquaint the jury with the fact of defendant's unrelated arrest and surrounding uncomplimentary circumstances. This revelation will necessarily impinge on the protective policy of Rule 404(b) of the Federal Rules of Evidence which excludes other crimes when their primary use is to show generalized propensity to violate

the law. Even if the fact that defendant and his companions were heavily armed and subsequently escaped from the local Georgia jail were concealed, the jury might well infer from the Georgia events that defendant was engaged in a nation-wide crime spree. Beyond all this, the government's argument—flight, therefore guilty mind respecting the bank robbery, therefore guilt of that robbery—cannot be fairly evaluated without revelation of the state court indictment. This would acquaint the jury with the assault incident that resulted in a conviction the court has held inadmissible to impeach.

■ In sum, the government's offer of proof entails the risk that unrelated crimes will be brought to the attention of the jury. At the very least, the jury might well be confused if it is called upon to resolve conflicting interpretations of what is essentially a collateral event. The question of whether the risk of inaccurate fact-finding by the jury will be increased more by reception than by exclusion of the evidence is thus a close one.

Still other considerations must be accorded some weight in determining admissibility under Rule 403. Among these is the delay in the completion of the trial which will necessarily be occasioned by the calling of at least one additional witness, the patrolman, who may be subjected to extended cross-examination. There is also a complex of issues respecting the legality of the Georgia arrest—though the court, after a preliminary hearing, has held the arrest valid and denied a motion to suppress on Constitutional grounds.

With the evidentiary and pertinent policy considerations in such an ambiguous posture, it is apparent that a ruling that the government's proof is either wholly admissible or wholly inadmissible would not be completely satisfactory. Accordingly, we hold that the evidence relating to defendant's arrest in Georgia will be inadmissible at trial, provided that defendant enter into a stipulation to the effect that he was in Georgia shortly after the robbery and that while there he used a false name.

■ As already noted, a conditional ruling of this sort is justified by Rule 102 of the Federal Rules of Evidence. Rule 403, read in the light of Rule 102, contemplates a flexible scheme of discretionary judgments by trial courts designed to minimize the evidentiary costs of protecting parties from unfair prejudice. Conditioning exclusion of proof of the arrest upon the entry of a stipulation is a practical solution to that problem here. Elimination of all references to the Georgia apprehension effectively removes the risk that the jury will perceive the defendant as a national crime figure. At the same time, the stipulation will afford the jury a concrete basis for the inference that defendant left New York to escape capture for the bank robbery. Any remaining ambiguity may be intelligently evaluated by the jury in light of the other evidence.

### III. CONCLUSION

At earlier pretrial proceedings in this case the court ruled that neither side may make any reference to defendant's membership in the Black Liberation Army, a militant organization of Black nationalists, even though some of its members admittedly participated in the robbery. This ruling was designed to protect the jury from prejudicial influences, to eliminate unnecessary collateral issues, and to guarantee that the trial proceeds expeditiously. The present rulings are intended to further these same objectives.

There are, of course, dangers when a trial is so hedged with restrictions and somewhat misleading presentations to the jury. Witnesses, counsel and the court have to be wary lest some forbidden fact slip out. The jurors, who tend to be extremely sensitive to courtroom nuances, may get the impression—wholly accurate in most cases—that they are not getting the entire story and they may let their imaginations fill in the

gaps to the prejudice of one side or another. Moreover, it is disquieting to be trying a carefully constructed and sanitized version of life—a kind of two dimensional cartoon rendition of the three dimensional world. But trials are not designed to get at the total truth in all its mystery; they only allow decision of narrow issues of fact and law within the limitations of a moderately effective litigation system. Given those limits, the conditions imposed in this case are justifiable.

The motions to exclude under Rules 609 and 403 are granted, subject to the conditions described.

So ordered.