UNITED STATES of America, Appellee,

v.

Douglas L. OAKES, Defendant,
Appellant.

No. 77–1012.

United States Court of Appeals,
First Circuit.

Submitted Sept. 29, 1977.

Decided Nov. 4, 1977.

Conrad W. Fisher, Worcester, Mass., on brief for defendant, appellant.

James N. Gabriel, U. S. Atty., and James E. O'Neil, Asst. U. S. Atty., Boston, Mass., on brief for appellee.

Before COFFIN, Chief Judge, CAMP-BELL and TUTTLE,\* Circuit Judges.

LEVIN H. CAMPBELL, Circuit Judge.

Douglas L. Oakes was convicted of possession and transfer of an unregistered sub-machine gun. At trial, the district court refused to rule prior to the defendant's opening on whether the Government could introduce evidence of a prior manslaughter conviction to impeach the defendant's credibility. When defendant took the stand, the court ruled that the probative value of the conviction outweighed its prejudicial effect, and allowed the conviction to be established by a certified docket entry. Defendant appeals from these rulings.

In regard to timing, Oakes asks us to rule that whenever the district court possesses what is deemed to be sufficient information to enable it to weigh the prejudicial effect of evidence of a prior conviction against the probative value of such evidence, it must make an advance ruling on the issue of admissibility. The controlling rule, Fed.R.Evid. 609(a),[1] provides that a witness may be impeached by evidence of convictions "during cross-examination". The Government relies on this language to argue that Rule 609(a) does not require a ruling before the defendant takes the stand, citing *United States v. Johnston,* 543 F.2d 55, 59 (8th Cir. 1976). It could also have cited *United States v. Crisona,* 416 F.2d 107, 117 (2d Cir. 1969) and *United States v. Cox,* 428 F.2d 683, 689 (7th Cir. 1970). None of the cases upon which appellant relies hold

to the contrary, and the legislative history is in no way conclusive.[2] We do not currently feel that we have enough of a conviction of the feasibility and fairness of advance rulings in all the situations that arise in trials to impose a per se rule.

This is not to say, however, that we do not encourage district courts to make advance rulings in appropriate cases. The fact that the rule speaks of using the impeaching conviction during cross-examination does not, in our view, indicate any restriction on making an advance ruling so long as the court has enough information to make the mandated determination as to probative value. Indeed, while we emphasize that the timing is discretionary, we think a court should, when feasible, make reasonable efforts to accommodate a defendant by ruling in advance on the admissibility of a criminal record so that he can make an informed decision whether or not to testify. The court's ruling "may have a significant impact on opening statements and the questioning of witnesses". *United States v. Jackson,* 405 F.Supp. 938, 942 (E.D.N.Y.1975).

The balancing problems faced by the court can be minimized by attempting to ascertain in advance what it needs to know about defendant's likely testimony and other relevant information. Defendant could be asked to state the substance of his testimony in advance. Should defendant mislead the court, the court may later change its ruling and let the record in if otherwise admissible. A defendant will not thereaft-

---

\* Of the Fifth Circuit, sitting by designation.

1. "For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime shall be admitted if elicited from him or established by public record during cross-examination but only if the crime (1) was punishable by death or imprisonment in excess of one year under the law under which he was convicted, and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the defendant, or (2) involved dishonesty or false statement, regardless of the punishment."

2. In *United States v. Mahone,* 537 F.2d 922, 928, 929 (7th Cir.), *cert. denied,* 429 U.S. 1025, 97 S.Ct. 646, 50 L.Ed.2d 627 (1976), the district

court had ruled in advance, but there was no discussion of any requirement to do so; in *United States v. Golden,* 532 F.2d 1244, 1247 (9th Cir. 1976), the court was not provided with the information necessary to make such a ruling and therefore the Ninth Circuit never reached the issue of whether, if it had such information, it was required to rule in advance; in *United States v. Jackson,* 405 F.Supp. 938, 942 (E.D.N.Y.1975), the case most supportive of appellant's position, Judge Weinstein would go no further than state, as a matter of policy, that "trial courts *should* rule . . . as soon as possible after the issue has been raised". [Emphasis added.]

er be heard to complain of any resulting prejudice created by his own actions. *Cf. Jeffers v. United States,* 432 U.S. 137, 150, 97 S.Ct. 2207, 53 L.Ed.2d 168 (1977). Indeed, a court's advance ruling might still be helpful even if made expressly provisional, allowing the court greater leeway to change it in light of later events and testimony. *See United States v. Jackson, supra,* 405 F.Supp. at 943.

█ Having stressed the general desirability of giving a ruling on the admissibility of prior convictions in advance of actual testimony (whether during pre-trial proceedings, at the close of the Government's case, or before the defendant or other affected witness takes the stand), we nevertheless refrain from making this an inflexible rule. In so holding, we are influenced to some extent by the recent legislative history of Rule 609(a), which received minute attention from the Congress. Before enactment of Rule 609(a), most states allowed a witness to be impeached by evidence of prior felony convictions without restriction as to type.[3] The House initially drafted a version which would permit impeachment by convictions "only if the prior crime involved dishonesty or false statement".[4] When the House draft was forwarded to the Senate, the Senate Judiciary Committee preserved with respect to the accused the restriction of impeachment to "offenses involving false statement or dishonesty"[5] but allowed impeachment by all felonies for other witnesses "if, and only if, the court finds that the probative value of such evidence outweighs its prejudicial effect against the party offering that witness."[6] On the floor, Senator McClellan led the effort, eventually successful, to replace both the House and Senate Committee version with a draft allowing all felony convictions to be used.[7] He argued that a jury should not have to choose between two conflicting witnesses, both cloaked in the same presumption of truthfulness, without being permitted to know that one of the two is a convicted felon.[8]

The present language emerged after the conflicting versions went to conference. The Committee's explanatory statement sheds little light on the factors a court must balance when the witness is the defendant.[9] During subsequent floor debates, however, the House Committee Chairman, William L. Hungate, argued that the conference rule is "close or closer to the House version than to the Senate's" and that "the rule puts the burden on the proponent of such evidence to show that it should be used—to show that the probative value of the evidence outweighs its prejudicial effect to the defendant".[10]

█ From this legislative history can be discerned a belief by Congress that the old

---

**3.** H.R.Rep.No. 650, 93d Cong., 2d Sess. (1974), reprinted in 1974 U.S.Code Cong. & Ad.News 7075, 7084.

**4.** *Id.*

**5.** S.Rep.No. 93–1277, 93d Cong., 2d Sess. (1974), reprinted in 1974 U.S.Code Cong. & Ad.News 7051, 7061.

**6.** *Id.*

**7.** 120 Cong.Rec. 37075–37083.

**8.** "Let me cite one more instance of how this rule would work. I imagine a defendant charged with a felony, who has an alibi, and denies he was present when the crime was committed. Appearing against him is a witness who claims to have seen him actually commit the crime. That is the testimony presented to the jury. Does not the jury in their effort to find the truth have a right to know something about the credibility of these witnesses? Does not the jury have a right to know that the man who now denies committing the crime has already been convicted of a serious felony and might not be a person who is unwilling to lie to the jury to escape punishment? . . . Does not society deserve the kind of protection that will allow the jury to have these facts—so that it can properly choose between the man who says, 'I saw him there, I saw him commit the crime', and the man who says, 'I did not do it?'" 120 Cong. Rec. 37081.

**9.** H.Cong.Rep.No. 93–1597, 93d Cong., 2d Sess. (1974), reprinted in 1974 U.S.Code Cong. & Ad.News 7098, 7102–3.

**10.** 120 Cong.Rec. 40891. This shift in the burden of persuasion also was emphasized as "an important change in the laws" by Congressman Dennis, another member of the Conference Committee. 120 Cong.Rec. 40894.

rule was too inflexible: Congress plainly felt that justice in certain cases would be advanced if the defendant was not demoralized from taking the stand by fear that a prior conviction would overshadow the positive aspects of his testimony.[11] And obviously whether in a given case defendant is encouraged to testify depends on what he learns before he takes the stand, not after. But while this is so, the fact also remains that Congress declined to abandon on a wholesale basis the traditional rule allowing impeachment by prior felony convictions. And in Rule 609(a) it requires the court in every case to weigh the probative value of admitting the evidence against its prejudicial effect to the defendant, a process which, in many cases a judge may feel is impossible to accomplish conscientiously without hearing defendant's actual testimony. While, therefore, we encourage judges to do what seems reasonable to facilitate an advance ruling in a proper case, we think it would be improper to read into Rule 609(a) a non-existent advance-disclosure requirement that could, at the very least, invite lengthy *voir dires* and otherwise lengthen trials. Nor does it seem very practicable for an appellate court to launch itself into the business of second-guessing trial judges on a matter so intimately bound up with the conduct of the trial, given the myriad individual circumstances and considerations that will affect different cases. Thus, while emphasizing the desirability of advance rulings when the district court deems them feasible, we hold that whether to rule in advance is within the discretion of the district court.

With regard to the separate question of whether the district court abused its discretion in admitting proof of the manslaughter conviction at all, we hold that it did not. The district court repeatedly gave ample time to the defense and prosecution to state their positions on Rule 609(a); gave a limiting instruction as soon as proof of the manslaughter conviction was introduced; found with ample justification that there was "a sharp, irreconcilable conflict" between the testimony of the Government's witnesses and that of the defendant, so that credibility was crucial to the case; and indicated awareness of our recent decision in *United States v. Russo,* 540 F.2d 1152, 1156 (1st Cir.), *cert. denied,* 429 U.S. 1000, 97 S.Ct. 529, 50 L.Ed.2d 611 (1976). We there held that there was no abuse of discretion in admitting, *inter alia,* a manslaughter conviction to impeach a defendant. We decline appellant's invitation to reconsider our decision in *Russo.*[12]

Appellant's final issue regarding the use of a certified docket, where there was evidence that the indictment was lost, does not merit discussion.

*The judgment of the district court is hereby affirmed.*

---

11. *United States v. Smith,* 179 U.S.App.D.C. 162, 173–75, 551 F.2d 348, 359–61 (1976) and Congressional debate cited therein; 3 Weinstein, Evidence § 609[03], at 609–77 to 609–78.

To this extent, Rule 609(a) has modified the precedential value of the Supreme Court's language in *McGautha v. California,* 402 U.S. 183, 215, 91 S.Ct. 1454, 28 L.Ed.2d 711 (1971), relied upon by the Government.

12. In this regard the district court's explicit statements in the record revealing its knowledge of Rule 609(a) and the basis for its resolution of the balancing required by it are most helpful to this court in carrying out our review. *See United States v. Smith,* 179 U.S.App.D.C. 162, 171 nn. 17, 18, 551 F.2d 348, 357 nn. 17, 18 (1976).