527 So.2d 84 (1988)
Robert Hayes McINNIS
v.
STATE of Mississippi.
No. 57699.
Supreme Court of Mississippi.
May 4, 1988.
Donald W. Boykin, Jackson, for appellant.
Edwin Lloyd Pittman and Mike Moore, Attys. Gen. by Billy L. Gore, Asst. Atty. Gen., Jackson, for appellee.
Before DAN M. LEE, P.J., and ROBERTSON and ZUCCARO, JJ.
ROBERTSON, Justice, for the court:

I.
Today's appeal presents the question whether a prior arson conviction suggests a propensity for lying so that it is admissible for impeachment purposes consistent with Rule 609, Miss.R.Ev. As the record reflects no details  whether the arson was pyromania or insurance fraud, we hold that the prosecution has failed in its burden to make a prima facie showing that the conviction has probative value.
Because the accused's credibility was a central issue in this robbery prosecution  his defense was alibi plus mistaken identification, we reverse and remand for a new trial on all issues.

II.

A.
On March 13, 1986, at approximately 7:00 p.m., Velma Craig (Craig) was robbed as she was leaving Kroger Grocery Store on Robinson Street in Jackson. Craig's assailant knocked her to the ground, grabbed her purse and fled on foot. The Defendant/Appellant, *85 Robert Hayes McInnis (McInnis), was apprehended approximately one hour later at a nearby Super Stop convenience store by Michael Standford (Standford), a Kroger security guard. Craig identified McInnis as her assailant, although before she saw him handcuffed at the police station she had given a substantially differing description of the man who robbed her.
McInnis maintained his innocence throughout the proceedings. McInnis' defense and testimony was based on an alibi. McInnis claimed that shortly before 5:00 p.m. on March 13, 1986, he went to his aunt's house as he was wont to do. He was planning to "cheat" on his wife, and called his prospective paramour from his aunt's house using the name "Jimmy" and asked her to call him back at the Super Stop at 8:00 p.m. because he could not talk freely at his aunt's house. The fact that McInnis was at his aunt's house on the date of the robbery from approximately 5:00 p.m. until shortly after 7:00 p.m. was substantiated by various members of his family who were at his aunt's house.
Although she could not give a definite time, Emma Weaver (Weaver), a Super Stop employee, stated that she saw McInnis at the Super Stop around "dusky dark" which she approximated at anywhere between 6:00 p.m. and 7:30 p.m. McInnis gave Weaver a piece of paper with the name "Jimmy" on it and the number for the outside pay telephone and asked Weaver to give the outside number to a woman who was going to call asking for Jimmy. The call came. Weaver estimates that thirty minutes elapsed from the time McInnis gave her the note until he was arrested.

B.
On April 7, 1986, Robert Hayes McInnis was charged with robbery in an indictment returned by the Hinds County Grand Jury. After trial on July 16 and 17, 1986, the jury found McInnis guilty as charged. The Circuit Court sentenced McInnis to a term of eight (8) years imprisonment at Parchman, the sentence to run consecutively to a twelve (12) year sentence imposed after revocation of probation on a 1981 first degree arson conviction. McInnis moved for judgment of acquittal notwithstanding the verdict of the jury, or, alternatively, a new trial, which motion was denied on August 8, 1986. This appeal has followed.

III.
McInnis' principal complaint concerns the prosecution's use at trial of a prior conviction. On April 23, 1981, Robert Hayes McInnis was convicted of arson. He was at that time sentenced to serve a term of twenty (20) years imprisonment, with eighteen and a half (18 1/2) of those years suspended. McInnis actually served ten (10) months. The Circuit Court admitted the prior conviction for impeachment purposes.
Two assignments of error before us concern, first, the procedure and, second, the substance of the prosecution's effort to impeach McInnis' credibility by presentation to the jury of the fact of this prior arson conviction.
What happened is this. On the morning of trial, July 16, 1986, McInnis filed a motion in limine requesting that the Court not allow cross-examination of him about his arson conviction. The Circuit Court reserved ruling on the motion, preferring to first hear evidence at trial. McInnis took the stand. At the conclusion of the defense's direct examination, the prosecution offered the arson conviction and the following discussion took place at the bench:
BY MS. BENNETT [PROSECUTOR]:
The prior conviction was a crime of violence.
BY THE COURT:
Well, tell me something about the charge. There are several degrees of arson. What was he charged with?
BENNETT:
First degree where he got twenty years  twenty initially and eighteen years and six months suspended and one year and six months to serve.
COURT:
Well, since it's first degree arson, I find it does have probative value that *86 would outweigh the detrimental factor to the Defendant, so you may bring it out.
The matter is governed by Rule 609(a), Miss.R.Ev., which provides:
(a) General Rule. For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime shall be admitted if elicited from him or established by public record during cross-examination but only if the crime
(1) was punishable by death or imprisonment in excess of one year under the law under which he was convicted, and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect on a party or
(2) involved dishonesty or false statement, regardless of the punishment.
Rule 609(a), Miss.R.Ev. is substantively identical to Rule 609(a), Fed.R.Ev.
McInnis argues that, because the Circuit Court refused to make a pre-trial ruling, either a definitive or conditional ruling, defense counsel could not provide a proper defense on the issue of the prior conviction. He contends that a pre-trial ruling would have "significantly influenced defense counsel's voir dire questions, opening statement and [McInnis'] direct examination". Defense counsel contends he was entitled to know whether the prior conviction was admissible before deciding whether his client should take the witness stand in his own defense. In support of his position, McInnis cites United States v. Jackson, 405 F. Supp. 938 (E.D.N.Y. 1975); United States v. Oakes, 565 F.2d 170 (1st Cir.1977); and United States v. Cook, 608 F.2d 1175 (9th Cir.1979).
In United States v. Jackson, 405 F. Supp. 938 (E.D.N.Y. 1975), the District Court stated:
In order fully to effectuate the policy of encouraging defendants to testify, trial courts should rule on the admissibility of prior crimes to impeach as soon as possible after the issue has been raised. [citations omitted] It is only after the admissibility of a conviction has been ruled on that the defense counsel can make an informed decision whether to put his or her client on the stand. In addition, the court's ruling may have a significant impact on opening statements and the questioning of witnesses.
Jackson, 405 F. Supp. at 942. The Jackson court went on to rule on the defendant's pre-trial motion and granted defendant's motion to exclude his state court conviction, conditioned upon (1) the defendant not "suggesting a pristine background on direct" and (2) defense counsel not impeaching government witnesses through the introduction of evidence of prior crimes without advance authorization from the court. Jackson, 405 F. Supp. at 943.
In United States v. Oakes, 565 F.2d 170 (1st Cir.1977), the Court of Appeals refused to make an inflexible per se ruling that defendants were entitled to advance rulings on the admissibility of prior convictions for impeachment purposes. The Court stated:
This is not to say, however, that we do not encourage district courts to make advance rulings in appropriate cases. The fact that the rule speaks of using the impeaching conviction during cross-examination does not, in our view, indicate any restriction on making an advance ruling so long as the court has enough information to make the mandated determination as to probative value. Indeed, while we emphasize that the timing is discretionary, we think a court should, when feasible, make reasonable efforts to accommodate a defendant by ruling in advance on the admissibility of a criminal record so that he can make an informed decision whether or not to testify. The court's ruling "may have a significant impact on opening statements and questioning of witnesses." [Quoting United States v. Jackson]
Oakes, 565 F.2d at 171. In United States v. Cook, 608 F.2d 1175 (9th Cir.1979), the Court of Appeals stated:
The matter [of when to rule on the admissibility of impeachment evidence] should be left to the discretion of the trial court with the reminder that advance planning helps both parties and the court. Trial by ambush may produce *87 good anecdotes for lawyers to exchange at bar conventions, but tends to be counterproductive in terms of judicial economy. Other courts considering the problem have recommended a provisional ruling in advance of proposed testimony, with the judge free to meet any deception by modifying the ruling. See, e.g., United States v. Oakes, 565 F.2d 170 (1st Cir. 1977).
Cook, 608 F.2d at 1186.
That the decision whether to give an advance ruling on the admissibility of prior conviction for impeachment purposes is discretionary with the trial judge appears to be well-established in the federal courts. See also United States v. Del Toro Soto, 676 F.2d 13, 18 (1st Cir.1982); United States v. Key, 717 F.2d 1206, 1208 (8th Cir.1983); United States v. Halbert, 668 F.2d 489, 494 (10th Cir.1982). Rule 609(a) of the Mississippi Rules of Evidence is all but identical to the corresponding federal rules. We find the federal decisions in this regard quite sensible and adopt the discretionary approach to advance rulings.
Without intending to discourage advance rulings, we hold that in the case at bar the Circuit Court acted well within its discretionary authority when it reserved ruling until the prior arson conviction was actually offered at trial.

IV.
Substantively, our concern is whether under Rule 609(a) the prior conviction was for a crime involving dishonesty or false statement [Rule 609(a)(2)] or whether the probative value of admitting evidence of the prior felony conviction outweighed the prejudicial effect on McInnis [Rule 609(a)(1)]. McInnis argues that the prosecution established neither. He notes that the record does not reflect that his conviction of arson was a conviction of crime involving dishonesty or false statement, directing our attention instead to the prosecutor's comment that the conviction was for a crime of violence. This suggests to McInnis that the prosecutor wanted to introduce the conviction to show his propensity to commit violent crimes.
The facts underlying the arson conviction were not presented to the Circuit Court. The Court simply found that, as a first degree arson conviction, the probative value outweighed "the detrimental factor to the defendant."
McInnis argues that under 609(a)(1) or (2) the Circuit Court should have inquired into the nature and circumstances of the prior conviction before ruling on its admissibility. He cites United States v. Crawford, 613 F.2d 1045, 1051 (D.C. Cir.1979). McInnis also contends that the Court should have performed on-the-record a five factor balancing test before ruling on the admissibility. The five factors are:
(1) The impeachment value of the prior crime.
(2) The point in time of the conviction and the witness' subsequent history.
(3) The similarity between the past crime and the charged crime.
(4) The importance of the defendant's testimony.
(5) The centrality of the credibility issue.
We approved just such a balancing test in Peterson v. State, 518 So.2d 632 (Miss. 1987), where the Court held that "Rule 609(a)(1) requires the trial judge to make an on-the-record determination that the probative value of the prior conviction outweighs its prejudicial effect before admitting any evidence of a prior conviction." Peterson, 518 So.2d at 636. This Court went on to note:
Although the relevant considerations will vary according to the particular facts of each case, there are some general factors which should be considered when a trial judge is making this determination.
Peterson, 518 So.2d at 636. The five factors outlined in Peterson are identical to those outlined by McInnis above. The Peterson Court directed:
In the future in such situations the trial judge must specifically weigh, on-the-record, those factors which make the conviction probative against those factors which make the evidence of the conviction prejudicial. Since the evidence in this case was manifestly prejudicial, *88 the Preston procedure of remanding only for a finding under Rule 609 does not apply and a new trial must be granted.
Peterson, 518 So.2d at 638.
In the present posture of the case at bar, the Crawford/Peterson balancing test never enters the picture. Before the Circuit Court is required to engage in this balancing process, the prosecution has a threshold burden of establishing prima facie that the prior conviction has probative value. Here the prosecution concedes that the arson conviction was not for a crime involving dishonesty or false statement[1] and that, as such, Rule 609(a)(2) does not come into play. We look then to Rule 609(a)(1) and determine whether the prior conviction has "probative value." Put otherwise, until this prima facie showing is made by the prosecution, there is nothing for the Circuit Court to balance or weigh against the prejudicial effect.
In searching the record for "probative value," we find only two points made. The prosecuting attorney urges that "the prior conviction was a crime of violence." In overruling the defense objection, the Circuit Court relied on the fact that "it's first degree arson." Neither point holds water.
At the risk of belaboring the obvious, the prior conviction is offered to impeach. Rule 609 allows use of prior convictions "for the purpose of attacking the credibility of the witness" and for no other. The issue with respect to which the prior conviction must be relevant, if it is to be admissible, is the defendant's propensity for truthfulness as a witness.
The underlying premise is intuitive. Sin is habit forming. If a person has done something once, he is more likely to do it again than one who has never done such, or so the theory goes. More specifically, one who in the past has engaged in a deliberate falsehood of felonious dimension may well be more likely to lie in a subsequent appearance on the witness stand than one not so experienced. Of course, the conviction has no impeachment value in and of itself. The prior criminal act, if it be of the requisite type, may suggest the witness less than credible. The fact of conviction merely serves as a reliable evidentiary basis for believing that the witness committed the prior impeaching act.
We emphasize that prior convictions are not admissible under Rule 609 or any other rule for any purpose other than attacking the credibility of the witness. The rule expressly says so. The point is driven home in United States v. Preston, 608 F.2d 626 (5th Cir.1979), where the Court of Appeals held
that evidence of prior convictions is admitted under Rule 609(a)(1) solely for the purpose of attacking credibility. [Emphasis added]
Preston held it impermissible to use a prior conviction to demonstrate
a propensity on the part of the defendant to have acted on the present occasion in conformity with the criminal character suggested by the previous conviction.
Preston, 608 F.2d at 639.
The record before us reflects only that in 1981 McInnis had been convicted of arson and had been given the sentence described above. Nothing in those bare facts, as a matter of common sense, tells us much of anything, for a moment's reflection reveals the complexity of the arson phenomenon which may  or may not  be probative on the credibility issue.
Positive fact and positive law attest to the varieties of arson. In the realm of fact, 1979 statistics published by the Law Enforcement Assistance Administration reflected that forty-two percent (42%) of the nation's arson fires were acts of (youthful) vandalism; twenty-three percent (23%) were set by individuals whose primary motive was one of revenge or spite; fifteen percent (15%) were arson-for-profit fires, such as igniting businesses to collect on the insurance claims; thirteen percent (13%) *89 were acts of pyromania, set by those who have an uncontrollable urge to set fires; and seven percent (7%) were set by those who use fire as a means of crime concealment.[2]
Our positive law codifies eight distinct categories of arson. See Miss. Code Ann. §§ 97-17-1 through -14 (1972 and Supp. 1987).
Consider the individual who is simply a pyromaniac and is convicted of arson. The essential features of pyromania are
recurrent failure to resist impulses to set fires and intense fascination with setting fires and seeing them burn.[3]
Typically, the pyromaniac
experiences a buildup of tension; and once the fire is underway, he or she experiences intense pleasure or release.[4]
Diagnostically, the pyromaniac is characterized by
lack of motivation, such as monetary gain or sociopolitical ideology, for setting fires.[5]
We have been furnished nothing suggesting that pyromaniac arsonists are more likely to lie than other witnesses.
More complex and profound is the character of Faulkner's quasi-fictional barn burner, Ab Snopes who practiced "shabby and ceremonial violence"[6] half explained by
this the old habit, the old blood ... which had run for so long (and who knew where, battening on what of outrage and savagery and lust) ...[7]
Yet this is the same Ab Snopes of whom it was said
that the element of fire spoke to some deep mainspring of his ... being, as the element of steel or of powder spoke to other men, as the one weapon for the preservation of integrity, else breath were not worth the breathing, and hence to be regarded with respect and used with discretion.[8]
Suffice it to say that little in the pyromania profile would shed any light on whether that individual was likely to be a truthful witness. And who knows if our general revulsion at Ab Snopes' old blood generates the specific conclusion that he will likely lie.
This is not to say that an arson conviction may never be used for impeachment. If a defendant burned a building as a part of a scheme to defraud an insurance company, and was subsequently convicted of arson, that might be prior conviction involving dishonesty or false statement which would indeed be relevant on the issue of credibility. Or, one might imagine a defendant who torched the business premises where he worked in order to cover up an inventory shortage for which he was responsible. That too might go to dishonesty and false statement. Perhaps barn burning Ab Snopes as well.
In the case before us the prosecution was certainly off base in offering as a reason that the prior conviction was for "a crime of violence." The fact that an individual commits a crime of violence has no per se relevance to his or her propensity for truthfulness.
In the present state of the record, we find merit in the assignment of error. The prosecution had a threshold burden of showing that McInnis' prior arson conviction had probative value regarding his propensity for lying. Instead, the prosecution's showing  it was a "crime of violence"  is a non sequitur. Because the prosecution failed to offer prima facie evidence that McInnis' prior arson involved fraud, dishonesty, false statement or other *90 elements suggesting a propensity for lying, we reverse and remand for a new trial on all issues.[9]
REVERSED AND REMANDED FOR A NEW TRIAL
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, SULLIVAN, ANDERSON, GRIFFIN and ZUCCARO, JJ., concur.
NOTES
[1] The concession may have been too hasty. Some cases of arson, e.g., insurance fraud, do involve dishonesty or false statement. Here we cannot say, for we have no clue just what sort of arson McInnis committed.
[2] U.S. Department of Justice, Federal Bureau of Investigation, Uniform Crime Report For The United States (1982).
[3] American Psychiatric Association, Diagnostic and Statistical Manual Of Mental Disorders 294 (3d ed. 1980) ("DSM-III").
[4] DSM-III at 294.
[5] DSM-III at 295.
[6] Faulkner, "Barn Burning", Collected Stories 20 (1977). See also Faulkner, The Hamlet 9-18 (1940).
[7] "Barn Burning", at 21.
[8] "Barn Burning", at 7-8.
[9] In view of the disposition we make of the Rule 609 issue, we find it unnecessary that McInnis' other assignments of error be addressed.