584 So.2d 1260 (1991)
Thomas Earl SETTLES
v.
STATE of Mississippi.
No. 89-KA-1307.
Supreme Court of Mississippi.
July 31, 1991.
*1261 James D. Franks, Hernando, for appellant.
Mike C. Moore, Atty. Gen., Ellen Y. Dale, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before ROY NOBLE LEE, C.J., and PITTMAN and BANKS, JJ.
BANKS, Justice, for the Court:

I.
Thomas Earl Settles was convicted in the Circuit Court of DeSoto County, Mississippi, of armed robbery with the use of a deadly weapon. He was sentenced by the jury to serve a term of life in the custody of the Mississippi Department of Corrections. He appeals to this court raising two issues: (1) whether the failure of the state's definitional armed robbery instruction to require the jury to find that the victim was placed in fear to effectuate the taking is fatal to the conviction; and (2) whether the failure of the court to accord him an advance ruling as to whether certain previous convictions could be used to impeach him should he testify was reversible error. In the end we find that the error in the instruction was harmless and that Settles is procedurally barred from raising it. We also find that Settles did not preserve a record sufficient for a determination of harm flowing from the denial of an advance evidentiary ruling. It follows that we affirm.

II.
On March 10, 1986, between 7:00 and 8:00 p.m., two men, one wearing a ski mask, entered A & A Food Store in Olive Branch, located in DeSoto County, Mississippi. The ski mask was the type which covered the mouth, chin and ears but left the nose, eyes and forehead visible. The man wearing the ski mask had a pistol in his hand.
He approached Ms. Pilcher, the clerk, and told her to open the cash register and then to go to the bathroom. The gunman told Ms. Pilcher he would kill her if she came out. She did as she was told and, once inside, locked the bathroom door. After several minutes had passed, Ms. Pilcher heard the voice of a female customer and returned to the store.
Several weeks later while reading The Commercial Appeal, she saw a picture of the man with a full beard whom she recognized as the person who held the gun and wore the ski mask. She notified the Sheriff and later identified Settles as the robber from another photograph.

III.
The state's instruction (S-1A) reads in pertinent parts as follows:
If you find from the evidence in this case beyond a reasonable doubt that:
1) Cash money was the personal property of Michael Allen and Robert Allen, Jr., d/b/a A & A Food Store; and
2) On or about the 10th day of March, 1986, Thomas Earl Settles feloniously took such personal property from the presence or from the person of LaRhesa Pilcher; and
3) Such taking was against the will of LaRhesa Pilcher; and
4) Thomas Earl Settles put LaRhesa Pilcher in fear of immediate injury to her person by the exhibition of a deadly weapon, to-wit: a pistol,
then you shall find the Defendant, Thomas Earl Settles, guilty of Robbery with a Deadly Weapon.
In Jones v. State, 567 So.2d 1189 (Miss. 1990), a similar instruction was held defective because it "did not specifically set out the cause and effect relationship between the taking and the putting in fear." (emphasis supplied) There the question of cause and effect was at issue because there was no testimony that the victim of the alleged robbery was placed in fear in order to take the property in question. The taking was actually accomplished through distraction or attempted distraction and there was no overt attempt to place the victim in fear. The victim testified that she was fearful but there was no evidence of an action on the part of the perpetrators calculated to induce that fear. Not only was the instruction defective, the proof was lacking. *1262 We concluded that the evidence failed to establish a robbery, reversed the conviction and remanded for sentencing for larceny.
Here there is no question that a robbery, not a theft, took place. The only issue is the identity of the robber. There is testimony that Ms. Pilcher was put in fear in order to take the money. Had the defect in the instruction been timely raised, correction would have been simple. Settles raised no contemporaneous objection to the instruction. He is, therefore, procedurally barred from raising this error on appeal. Moawad v. State, 531 So.2d 632, 635 (Miss. 1988).

IV.
Settles complains that the trial court refused his request for a preliminary determination whether his prior convictions could be used for impeachment. Settles sought a ruling after the state had rested and before he put on his defense. He announced that he would not testify if his criminal history was permitted to be used for impeachment. The court declined to rule and examined Settles under oath as to the voluntariness of his decision not to testify. The court told Settles that he would have to take his chances as whether his prior convictions would be used and that it was possible that they would be excluded. Settles declined to testify.
We have held that the grant or denial of a hearing to determine in advance the admissibility of a prior criminal conviction for impeachment purposes is discretionary. McInnis v. State, 527 So.2d 84, 87 (Miss. 1988). Settles urges that we revisit the issue, at least for the purpose of determining whether, when the court has all of the information necessary to determine the issue in advance of the defendant taking the stand, it is an abuse of discretion not to make that determination.
The state urges that we adhere to the McInnis policy. It contends that the record was not sufficient for the court to make an advance determination because Settles had not yet testified and never made known what his testimony would be. The record is barren of any proffer by Settles of the testimony he might have given had he taken the stand to testify in his own defense. The state also urges this court to embrace the holding of the United States Supreme Court in Luce v. United States, 469 U.S. 38, 105 S.Ct. 460, 83 L.Ed.2d 443 (1984) to the effect that any claim of error in allowing improper impeachment testimony is waived by the failure of the defendant to testify.
In McInnis we opted to follow federal decisions which have interpreted the federal rules of evidence, on which our rules are based, to provide that the decision whether to grant an advance ruling on whether prior convictions may be used for impeachment is left to the discretion of the trial court. See, United States v. Cook, 608 F.2d 1175 (9th Cir.1979); United States v. Oakes, 565 F.2d 170 (1st Cir.1977). Most federal circuits encourage preliminary rulings but none have required an advance determination or found an abuse of discretion in failing to do so.[1]See, United States v. Connally, 874 F.2d 412 (7th Cir.1989); Cook, 608 F.2d 1175; Oakes, 565 F.2d 170.
Several of our sister states have taken a different view. In Apodaca v. People, 712 P.2d 467 (Colo. 1985) the Colorado Supreme Court held that the failure to accord a criminal defendant a preliminary determination of the admissibility of a prior conviction for impeachment "impermissibly burdened his right to testify in his own defense." Apodaca, 712 P.2d at 472. That court reasoned that:
A timely judicial ruling on a defendant's motion to suppress prior conviction evidence for the purpose for impeachment serves the vital function of *1263 providing the defendant with the meaningful opportunity to make the type of informed decision contemplated by the fundamental nature of the right to testify in one's own defense.
Apodaca, 712 P.2d at 473.
In Washington, an appellate court has concluded that a criminal defendant is entitled to a ruling before he takes the stand finding no persuasive reason why the trial court would need to defer its ruling beyond that point. State v. Porter, 36 Wash. App. 451, 674 P.2d 694 (1984).
Similarly, in People v. Sangster, 123 Mich. App. 101, 333 N.W.2d 180 (1983), a Michigan appellate court reversed a criminal conviction because the trial court failed to advise the defendant whether prior convictions would be available for impeachment. The court reasoned that any uncertainty as to the balancing task of the court with regard to probative value and prejudicial effect should be resolved by requiring a statement from defense counsel as to the general nature of the testimony. The court could, of course, withdraw any ruling excluding the evidence in the event that the testimony offered substantially diverges from that indicated.
In the state of Oregon, the legislative commentary to the rules of evidence prescribe that the determination whether a crime involves falsity be made by preliminary motion and that same requirement has been judicially applied to the Rule 609(a)(1) issue. State v. McClure, 298 Or. 336, 692 P.2d 579 (1984). The court concluded that "[i]t is not realistic or necessary for a defendant to have to wait until he is on the stand to find out whether he will be impeached with prior crime evidence." McClure, 692 P.2d at 583. Under certain circumstances the trial court may defer the ruling to hear testimony but "this should be the rare occasion." Id.
New Jersey has also recognized that in practice the determination is usually made before trial and that it is not essential that a trial court hear the testimony of the defentant in order to make the required determination. State v. Whitehead, 104 N.J. 353, 517 A.2d 373 (1986).
Most of the concern over preliminary rulings on admissibility involve the question whether error is being created for error's sake, wasting judicial time, where the defendant has no intention of testifying, and whether a reviewing court is deprived of a meaningful opportunity to determine whether any error committed is harmless where the defendant does not testify. The requirement that the defendant make a proffer responds to both concerns. See, State v. Koloske, 100 Wash.2d 889, 676 P.2d 456 (1984). A defendant may not, of course, be compelled to follow through and actually offer testimony; thus the potential for abuse by defendants not intending to testify remains. Nevertheless, that potential for abuse is a small price to pay for a system that allows an individual faced with a crucial decision to make an informed choice about courses of conduct.
The argument that the trial court is not in a position to rule on evidentiary matters in a vacuum, and that it cannot be expected to perform its balancing task with regard to probative value and prejudicial effect, also misses the mark. First, the balancing task is often unnecessary as the convictions at issue are excludable for other reasons. For example, while we found no abuse of discretion in McInnis in refusing to give a preliminary ruling on whether an arson conviction could be used for impeachment, on the merits we found that the conviction was erroneously admitted without regard to balancing. We concluded that the crime of arson has no intrinsic probative value as to credibility. That threshold determination has nothing whatever to do with the defendant's testimony. Similarly, the question whether a particular offense is temporally barred or is a misdemeanor not involving dishonesty or false statement can also be determined without regard to the defendant's testimony.
Moreover, the nature of the defendant's testimony can usually be anticipated and, beyond that, those convictions that have the highest potential for prejudice are equally apparent. To the extent that the thrust of the defendant's testimony is not obvious, the requirement that testimony be *1264 accurately told before a ruling eliminates any difficulty. The dangerous convictions are for crimes which are substantially similar to the crime charged and those which, while not similar, have limited application to the issue of credibility but enormous potential for overwhelming the relevant facts of the crime charged. A convicted sex offender, for example, may suffer substantially from that fact in a shoplifting prosecution.
Most importantly, as noted by the Oregon court in McClure, the crucial factors in the determination of whether a prior conviction is to be admitted have nothing to do with the testimony offered by the defendant. 692 P.2d at 592. Like Oregon, in Peterson v. State, 518 So.2d 632 (Miss. 1987), we adopted the five factor list enunciated by the federal courts for Rule 609 determinations.[2] Only the last two of those factors involve the defendant's testimony and, on reflection, it can readily be seen that they tend to offset each other. That is, as the importance of the witness' testimony tends to rise so does the centrality of the credibility issue. See, Surratt, Prior-Conviction Impeached Under the Federal Rules of Evidence: A suggested Approach to Applying the `Balancing' Provision of Rule 609(a), 31 Syracuse L.Rev. 907, 942 (1980). (The fourth and fifth "factors embody general concepts that are, in actuality, merely restatements of the conflicting interests that Congress balanced in adopting the rule.").
So viewed, it is clear that the crucial factors, the impeachment value of the prior crime, the point in time of conviction and the witness' subsequent history and the similarity between the past crime and the charged crime may all be assessed and determined before trial and certainly before the witness testifies.
Finally, the argument that preliminary rulings will allow a criminal defendant to claim a saintly life without contradiction is spurious. A simple caveat to the ruling to the effect that any claims of prior good conduct or law abiding disposition will result in opening the door to the criminal record would suffice. Indeed such a caveat is inherent in the ruling in that the evidence becomes not so much impeachment as rebuttal evidence under those circumstances. See, Rule 404(a)(1) Mississippi Rules of Evidence; United States v. Lipscomb, 702 F.2d 1049, 1058, n. 36 (D.C. Cir.1983)
It is clear, then, that there are substantial arguments for the proposition that a trial court should be required under ordinary circumstances to give an advance ruling on at least some of the aspects of the admissibility of prior convictions. In the instant case, Settles had an extensive criminal record. It is apparent that some of his convictions, such as public drunk and carrying a concealed weapon do not meet the threshold of admissibility for impeachment under our rule. Some were time barred. The more serious crimes of manslaughter, assault with intent to commit murder, assault with intent to commit burglary and assault with intent are more problematical.[3]
*1265 This brings us four square to the issues put to us by Settles  whether, we shall adhere to McInnis leaving the timing of the hearing in the discretion of the trial court, and, if so, whether, nevertheless, there was an abuse of discretion in this case. As to the first question, we reaffirm McInnis with the admonition to the bench and bar that there are sound reasons that dictate a serious consideration of applications for preliminary rulings. We strongly encourage that such rulings be made and that the trial courts defer ruling only in those rare circumstances where delay is absolutely necessary to a fair presentation of the issue.
In the instant case, there was an abuse of discretion. The trial court refused to consider the prior convictions in summary fashion stating only that it was not fair that the prosecutor be compelled to disclose whether he intended to use prior convictions. Settles, of course, was seeking no such disclosure. He sought only a determination whether the law as applied to the facts of his case would permit the use of certain facets of or all of his criminal history. The least to which he was entitled was exclusion of those convictions which are not permitted for impeachment under our rules. To determine whether he was entitled to more requires an examination of the circumstances of the other convictions which should in the first instance have been made by the trial court and which this record does not permit us to make.[4] See, United States v. Lipscomb, 702 F.2d at 1062-1068, for a discussion of whether and when it is necessary to review the underlying circumstances of the prior crime to determine admissability. See, also, our discussion of the nature of the crime charged in McInnis, 527 So.2d 84.
This brings us to a consideration whether Settles has properly preserved the issue. In Saucier v. State, 562 So.2d 1238, 1245 (Miss. 1990), we held that in order to preserve the issue whether a court erred in ruling on a motion to limit use of prior convictions the least that is required of the criminal defendant is that a proffer be made of the testimony that he would have offered but for the ruling. Id. at 1245. While, as we note above, the content of defendant's testimony may be of little assistance to the trial court in making a decision on admissability, the requirement of a proffer serves two purposes. It provides a modicum of assurance that the requested ruling is not purely advisory and, most importantly, it provides a basis for this court's harmless error analysis.
Of course, if a proffer is required in the face of an erroneous ruling, surely no less is required to preserve the issue where no ruling is made. Settles made no such proffer. Under the circumstances we need not reach the question urged upon us by the state, whether, the failure to actually testify is an absolute bar to the question of the availability of prior conviction evidence. Settles' conviction must be affirmed because he failed preserve the issue in the manner we have prescribed in Saucier, 562 So.2d 1238.
*1266 CONVICTION OF ARMED ROBBERY WITH USE OF A DEADLY WEAPON AND SENTENCE TO LIFE IMPRISONMENT AFFIRMED.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, ROBERTSON, SULLIVAN, PITTMAN and McRAE, JJ., concur.
NOTES
[1] The only case finding an abuse of discretion in failing to make an advance determination is United States v. Burkhead, 646 F.2d 1283 (8th Cir.1981). There the prior conviction was on a substantive count which the defendant sought to suppress during a trial on the conspiracy count of the same indictment. The Eighth Circuit has subsequently restricted the holding of Burkhead to its "special circumstances". United States v. Masters, 840 F.2d 587, 591 (8th Cir.1988).
[2] Those factors are as follows:

(1) The impeachment value of the crime;
(2) The point in time of the conviction and the witness' subsequent history;
(3) The similarity between the past crime and the charged crime;
(4) The importance of the the defendant's testimony; and
(5) The centrality of the credibility issue.
[3] These crimes are referred to by the prosecutor in an unusual colloquy that followed conviction. With the jury still in the box, after having found Settles guilty and that he should be sentenced to life, the court inquired of the defendant whether he had anything to say before sentence was imposed. Settles responded by saying "It wasn't me, Your Honor. I never robbed nobody. I don't even know where Olive Branch, Mississippi is. I wasn't in Mississippi at that time of the year. It wasn't me." The court then briefly told Settles that the matter was an issue to be decided by the jury and it had done so and sentenced him to life imprisonment. There followed some discussion of whether Settles would remain in DeSoto county or be returned to Tennessee, where he was also a prisoner. Then the prosecutor felt compelled to tell the jurors about Settles' prior record. This was permitted by the court and the four convictions mentioned here were related to the jury. The only other evidence of convictions in the record before this court is the rap sheet filed with discovery materials. The rap sheet does not indicate the disposition of any felony charge within ten years preceding the trial of the instant case. This court can only assume that Settles suffered the convictions mentioned between the rendition of the rap sheet showing similar charges in 1984 and the trial of this matter in 1989.
[4] From the confusing rap sheet and the prosecutor's statement to the jury, we might surmise that Settles was convicted of manslaughter, at least one incident of assault related to a burglary, and an incident of assault on a police officer, all probably committed in 1984. Crimes in the nature of the two assaults arising out of other crimes, and possibly the manslaughter, have been held to evince a criminal mind which has at least some probative value for assessing credibility. See, United States v. Lipscomb, 702 F.2d 1049 (D.C. Cir.1983); State v. McClure, 298 Or. 336, 692 P.2d 579 (1984). Based on that conclusion, assuming our concurrence, and the fact that the activity and the convictions occurred relatively close in time to the activity and trial of this case, we might readily suppose that the trial court would have admitted the prior convictions mentioned by the prosecutor. We could not on this record, say such ruling would have been an abuse of discretion. Settles failed to testify in order to avoid the possibility of an adverse ruling. Because an adverse ruling would not have been an abuse of discretion, it might be persuasively argued that the error in failing to rule was harmless. We find that Settles did not preserve the issue, however, and we do not attempt the harmless error analysis.