639 So.2d 1247 (1993)
Charles Alexander (Charlie) HOPKINS
v.
STATE of Mississippi.
No. 90-KA-0921.
Supreme Court of Mississippi.
October 21, 1993.
Rehearing Denied August 18, 1994.
Douglas C. Stone, Stone & Hayes, Columbus, for appellant.
Michael C. Moore, Atty. Gen., Pat S. Flynn, Asst. Atty. Gen., Jackson, for appellee.
Before HAWKINS, C.J., and SULLIVAN and McRAE, JJ.
SULLIVAN, Justice, for the Court:

THE FACTS
The trial to determine Charlie Hopkins' guilt or innocence on a charge of sexual *1248 battery began on August 30, 1990, in the Circuit Court of Lowndes County. When pre-trial motions were taken up, Hopkins presented a motion in limine to preclude admission, for impeachment use pursuant to M.R.E. 609, of his 1983 conviction of touching a child for lustful purposes. Janice Stockman, a social worker with the Department of Human Services, was called to testify regarding this motion. She stated that Hopkins was known by her agency to be a pedophile and that one general characteristic of pedophiles is an inability to be truthful. The example given concerning a pedophile's inability to tell the truth was the refusal to admit having committed such offenses. When asked whether conviction of a pedophilic crime would reflect on the truthfulness of the individual convicted, Ms. Stockman answered in the affirmative.
After reviewing Peterson v. State, 518 So.2d 632 (Miss. 1987), the trial judge found the prior conviction more probative than prejudicial and overruled Hopkins' motion. The following findings were made on the record:
1. The date of the prior conviction was within ten (10) years of the date of the current crime as alleged in the indictment and within ten (10) years of the date of the trial.
2. The prior conviction was for a different crime than that for which Hopkins was currently standing trial, although substantially similar.
3. Pedophiles share a general characteristic of untruthfulness.
4. Credibility in this case was extremely important due to a lack of witnesses and Hopkins' characteristic of untruthfulness was central to his credibility, therefore probative in that respect.
5. The probative value of the prior conviction far outweighed the prejudicial effect and evidence of the conviction would be allowed for impeachment purposes only.
The jury was then returned to the courtroom and the State proceeded with its case-in-chief. Evidence of the prior conviction, via Hopkins' admission on cross-examination that he had been convicted of touching a child for lustful purposes, was used to impeach Hopkins' credibility. A verdict of guilty was subsequently returned. Hopkins was sentenced to twenty-eight (28) years in the Mississippi Department of Corrections. Following denial of his motion for new trial, Hopkins perfected an appeal to this Court. Because we reverse and remand based on one issue presented by Hopkins, we decline to address his remaining assignment of error.

THE LAW

DID THE LOWER COURT ERR IN DENYING HOPKINS' MOTION IN LIMINE TO PRECLUDE ADMISSION OF HIS PRIOR CONVICTION OF TOUCHING A CHILD FOR LUSTFUL PURPOSES, NOTWITHSTANDING THAT IT WAS ALLOWED FOR IMPEACHMENT PURPOSES ONLY?
Prior to the adoption in 1986 of the Mississippi Rules of Evidence, evidence law in this state was composed of various statutes and caselaw. See generally, Staton, Miss. Evidence (2d Ed.), Preface. Before the adoption of the Rules, Mississippi common law had little, if any, restriction on the admissibility of prior criminal convictions. Under Mississippi common law, once an accused took the stand, prior criminal convictions were admissible to affect his credibility. Miss. Code Ann. § 13-1-13 (1972) (previously, Miss.Code of 1942, § 1693; originally, Miss.Code of 1857, Ch. 61, Art. 208). Baker v. State, 307 So.2d 545 (Miss. 1975); Allison v. State, 274 So.2d 678 (Miss. 1973); Benedetti v. State, 249 So.2d 671 (Miss. 1971); Dorroh v. State, 229 Miss. 315, 90 So.2d 653 (1956); Breland v. State, 221 Miss. 371, 73 So.2d 267 (1954); Smith v. State, 217 Miss. 123, 63 So.2d 557 (1953); Scarbrough v. State, 204 Miss. 487, 37 So.2d 748 (1948); Hartfield v. State, 186 Miss. 75, 189 So. 530 (1939); Brown v. State, 96 Miss. 534, 51 So. 273 (1910).
Even though an accused's prior convictions could not be admitted for the purpose of proving aggravating circumstances, they were still admissible to impeach the witness' credibility. Mhoon v. State, 464 So.2d 77 (Miss. 1985).
*1249 The Federal Rules of Evidence, adopted in 1975, preceded the Mississippi Rules of Evidence by about ten (10) years. The original F.R.E. 609(a) proposed by the United States Supreme Court was modeled after Section 133(a) of Public Law 91-358, enacted in 1970 as part of the District of Columbia code. Moore's Federal Practice, 1993 Rules Pamphlet, Part 2, Federal Rules of Evidence at 232. It stated,
For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime is admissible but only if the crime (1) was punishable by death or imprisonment in excess of one year under the law under which he was convicted or (2) involved dishonesty or false statement regardless of the punishment.
As evidenced by Congressional committee reports and extensive debates, section (1) as proposed by the Court was too wide in scope in the opinion of Congress. The version of F.R.E. 609(a) passed by Congress amended the Court's proposal, adding among other things, the requirement that the trial judge determine the degree of prejudice caused if the prior conviction is admitted.
(a) General rule. For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime shall be admitted if elicited from the witness or established by public record during cross-examination but only if the crime (1) was punishable by death or imprisonment in excess of one year under the law under which the witness was convicted and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the defendant, or (2) involved dishonesty or false statement, regardless of the punishment.
F.R.E. 609(a) (effective October 1, 1987).[1]
Congress felt that admission of evidence of prior crimes for the purpose of affecting a defendant's credibility had a high risk of affecting not only his credibility, but also his propensity to act in conformity with his prior crime. Therefore, it proposed a balancing test to insure that prior convictions could be admitted only if the evidence was more probative than prejudicial.
Crimes involving dishonesty or false statement do not fall under the balancing test of part (a)(1). It is clear from the debate that crimes which involve "dishonesty or false statement" are those which contain dishonesty as an element of its legal meaning, such as perjury. Sen. McClellan, & Sen. Hart, 120 Cong.Rec. 37076-37077 (November 22, 1974), cited in, Louisell and Mueller, Federal Evidence, Vol. 3, at 300-03 (1979). However, crimes which factually could involve deception, but do not require deception for a conviction, are not crimes which involve "dishonesty or false statement" according to Rule 609(a)(2). Id. Therefore, prior convictions of rape, murder, armed robbery, and the like would be admissible only if they pass the prejudicial/probative balancing test of 609(a)(1). Id.
The meaning of crimes involving dishonesty as intended by Congress is further indicated by the Notes of the Committee on the Judiciary, Senate Report No. 93-1277. The committee states,
Therefore, with respect to defendants, the committee agreed with the House limitation that only offenses [which] involved false statement or dishonesty may be used. By that phrase, the committee means crimes such as perjury or subornation of perjury, false statement, criminal fraud, embezzlement or false pretense, or any other offense, in the nature of crimen falsi the commission of which involves some element *1250 of untruthfulness, deceit or falsification bearing on the accused's propensity to testify truthfully.
28 U.S.C.A., Rule 609, Notes of Committee on the Judiciary, Senate Report No. 93-1277. Note to Subdivision (a). (West 1984 & Supp. 1993). The House and Senate Conference Committee reiterated this meaning of part (a)(2), that the crimes spoken of are those which involve dishonesty as an element necessary for conviction. 28 U.S.C.A., Rule 609 (West Supp. 1993).
Cases interpreting Rule 609(a)(2) have also found that the meaning of crimen falsi was restricted to crimes where deceit was an element. United States v. Smith, 551 F.2d 348 (D.C. Cir.1976). Congressional debate indicates that the Congressmen who adopted this rule were fully aware of this limited meaning of crimes involving dishonesty. Smith, 551 F.2d at 363. The term crimen falsi covered several crimes which rendered a witness ineligible to testify at common law. Id. at 362-362, n. 26. Robbery is not a crimen falsi. Id. Felony theft is not a crime "involving dishonesty or false statement." Coursey v. Broadhurst, 888 F.2d 338, 342 (5th Cir.1989).
Though a few differences exist, the Mississippi Rules of Evidence are generally the same as the Federal Rules of Evidence. In construing the Mississippi Rules of Evidence, this court has generally cited federal caselaw which interpreted the federal rule corresponding with the Mississippi Rule of Evidence at issue in the case. See generally, Johnson v. State, 529 So.2d 577, 587 (Miss. 1988).
The balancing test of Rule 609(a)(1), as elaborated upon in the Mississippi case Peterson v. State, involves the consideration of factors which originated in a federal case, Gordon v. United States, 383 F.2d 936 (D.C. Cir.1967) (Burger, J.). Gordon is a pre-rules case which the Seventh Circuit incorporated in United States v. Mahone, 537 F.2d 922 (7th Cir.1976).
Gordon and Mahone were the sources relied upon by this court in Peterson v. State, 518 So.2d 632, 636 (Miss. 1987). See also Johnson v. State, 525 So.2d 809 (Miss. 1988) (citing Mahone and Gordon) (prior rape conviction had very little bearing on defendant's credibility). Johnson cited a Fifth Circuit opinion for support of the requirement that the trial court make an on the record finding in 609(a)(1) situations. Johnson v. State, 525 So.2d 809 (Miss. 1988) [citing United States v. Preston, 608 F.2d 626 (5th Cir.1979)].
Mississippi Rule of Evidence 609 differs from the federal rule in that the 609(a)(1) balancing test in Mississippi looks to the possible prejudice to "a party," rather than only criminal defendants as stated in the federal rule. Comment to Rule 609, M.R.E. 609 (Comment effective March 1, 1989).
The issue in the instant case involves a prior conviction of a criminal defendant. Therefore, the application of Rule 609(a)(1) is the same under both the federal and Mississippi rules. The Comment to the Mississippi rules makes it clear that Rule 609(a)(2) is the same as the federal rule and its interpretation. The Mississippi Rule of Evidence 609 Comment defines a crime involving dishonesty as one "the commission of which involves some element of deceit...." This reiterates language found in the federal rule comment and Congressional history. Comment, M.R.E. 609. It further states, "This is a change from pre-rule Mississippi practice which allowed impeachment by any prior conviction, felony or misdemeanor, other than misdemeanor traffic offense." Id.
Our adoption of the Mississippi Rules of Evidence drastically changed what may and may not be done at trial. M.R.E. 404 states:
(a) Character Evidence Generally. Evidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion, except:

(1) Character of Accused. Evidence of a pertinent trait of his character offered by an accused, or by the prosecution to rebut the same;

(2) Character of Victim. Evidence of a pertinent trait of character of the victim of the crime offered by an accused, or by the prosecution to rebut the same, or evidence *1251 of a character trait of peacefulness of the victim offered by the prosecution to rebut evidence that the victim was the first aggressor;

(3) Character of Witness. Evidence of the character of a witness, as provided in Rules 607, 608, and 609.
(b) Other Crimes, Wrongs, or Acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
M.R.E. 404. This Rule flatly prohibits the use of character evidence of a defendant to show he acted in conformity therewith on a particular occasion, unless (1) such evidence is offered by the defendant or (2) the defendant takes the witness stand. If (1) the defendant offers evidence of his own character to show that he acted in conformity therewith on a particular occasion, the prosecution may then also offer evidence of defendant's character in rebuttal. If (2) the defendant testifies at his trial, evidence of his character may be introduced as provided in Rules 607, 608, and 609. The prosecution's impeachment of Hopkins' credibility through the use of character evidence was not in rebuttal, as Hopkins had not previously offered evidence of a character trait of his to show conformity therewith on a particular occasion. Hopkins did, however, take the witness stand at his trial. Consequently, we must look to Rules 607, 608, and 609 to determine whether use of character evidence to impeach Hopkins' credibility was proper.
M.R.E. 607 provides that any party may attack the credibility of a witness. M.R.E. 608 reads:
(a) Opinion and Reputation Evidence of Character. The credibility of a witness may be attacked or supported by evidence in the form of opinion or reputation, but subject to these limitations: (1) the evidence may refer only to character for truthfulness or untruthfulness, and (2) evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked by opinion or reputation evidence or otherwise.
(b) Specific Instances of Conduct. Specific instances of the conduct of a witness, for the purpose of attacking or supporting his credibility, other than conviction of crime as provided in rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning his character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.
The character evidence offered by the prosecution to impeach Hopkins' credibility was his prior conviction, therefore Rule 609 controls. M.R.E. 609(a) provides:
General Rule. For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime shall be admitted if elicited from him or established by public record during cross-examination but only if the crime (1) was punishable by death or imprisonment in excess of one year under the law under which he was convicted, and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect on a party or (2) involved dishonesty or false statement, regardless of the punishment.
If a conviction is more than ten years old, additional limits are placed on its admissibility. M.R.E. 609(b). Hopkins' 1983 conviction at issue here occurred within ten years of the date of the trial which gave rise to this appeal, therefore the limitations of subsection (b), M.R.E. 609, are of no import. Evidence of this conviction was elicited from Hopkins on cross-examination, as required by the Rule, as well as on direct examination. Nevertheless, further pre-requisites are required before evidence of the conviction is admissible pursuant to M.R.E. 609.

M.R.E. 609(a)(1)
The trial court found Hopkins' 1983 conviction admissible pursuant to M.R.E. *1252 609(a)(1), therefore this Court must determine whether the trial court abused its discretion in granting admissibility of a prior conviction for impeachment purposes under M.R.E. 609(a)(1). McGee v. State, 569 So.2d 1191, 1195 (Miss. 1990), citing Johnson v. State, 525 So.2d 809, 812 (Miss. 1988). Where admission of evidence of a prior conviction is manifestly prejudicial, this Court will reverse and remand or remand for a finding pursuant to M.R.E. 609(a)(1) if none has been made. Jordan v. State, 592 So.2d 522, 523 (Miss. 1991); Johnson, 525 So.2d at 813; Signer v. State, 536 So.2d 10, 13 (Miss. 1988).
The crime, touching a child for lustful purposes, was punishable by imprisonment in excess of one year. Miss. Code Ann. § 97-5-23 (1972 & Supp. 1992). Still, an on-the-record determination that the probative value of the prior conviction outweighs the prejudicial effects must be made in order to properly admit evidence of the conviction. M.R.E. 609(a)(1), Comment; Johnson v. Fargo, 604 So.2d 306, 310 (Miss. 1992), citing McInnis v. State, 527 So.2d 84, 87 (Miss. 1988) and Peterson, 518 So.2d at 636. However, the State first has a threshold burden of establishing prima facie that the prior conviction has probative value. Johnson, 604 So.2d at 310; McInnis, 527 So.2d at 88.
Probative value of the prior conviction must bear on Hopkins' credibility. Johnson, 604 So.2d at 310. As we stated in McInnis,
At the risk of belaboring the obvious, the prior conviction is offered to impeach. Rule 609 allows use of prior convictions "for the purpose of attacking the credibility of the witness" and for no other. The issue with respect to which the prior conviction must be relevant, if it is to be admissible, is the defendant's propensity for truthfulness as a witness.
McInnis, 527 So.2d at 88.
Hopkins made a motion in limine to preclude admission of his prior conviction because it would be more prejudicial to his case than probative. In opposition to Hopkins' motion, the State offered testimony of Janice Stockman, a social worker, who said that pedophiles share a general characteristic of untruthfulness and that Hopkins was known to her agency to be a pedophile.
Q All right. Now, Janice, if you would, what are the characteristics of a pedophile, an individual who commits the crime of touching a child for lustful purposes? Describe those for the Court, please.
A In our sessions and  that, you know, we've been in involving pedophiles and, uh, their characteristics, they are highly, uh, unsophisticated; they are not not  they are very undermotivated, lack self-esteem; they're not truthful; they are  have difficulty in  in establishing a sexual relationship with 
Q All right.
A  an adult partner.
Q Now the  the critical portion here on this particular hearing is one of the characteristics I'm hearing is that they are untruthful. Is that correct?
A Correct.
Q Such a  a conviction for such a crime then goes to the truthfulness of that particular individual, is that correct?
A Yes.
* * * * * *
Q Now pursuant to your twenty-three years of experience, Janice, what have you observed in regards to the truthfulness of individuals who have been convicted of the crime of touching a child for lustful purposes?
A I have yet to have a person that touched a child for lust  lustful purposes tell me they did it. They, you know, make up excuses or reasons or  or things that happened, but never, "Yes, I did this." They are not truthful with us.
On cross-examination, Ms. Stockman said the following:
Q Now, uh, do you claim to be an expert on this?
A I don't think that anybody is an expert on any area of child abuse. I think you study and learn on a daily basis.
Q So you wouldn't qualify as an expert?
A I don't think anyone does.
* * * * * *

*1253 Q Uh, now, Mrs. Stockman, uh, are you telling me that, uh, Mr. Hopkins is a pedophile? Is that what you're trying to say?
A I believe that this is known to our agency for several years that this is 
Q Ma'am?
A I believe that we have known for several years that Mr. Hopkins has a problem; yes.
The trial judge stated on the record that as a result of Ms. Stockman's testimony he found untruthfulness to be a natural characteristic of pedophiles. As Hopkins had previously been convicted on a charge of touching a child for lustful purposes, a crime of a pedophilic nature, we assume the judge also found, again based on Ms. Stockman's testimony, that the State met its threshold burden of proving that Hopkins' prior conviction was relevant to his propensity for truthfulness.[2] Indeed, Ms. Stockman opined that conviction of a pedophilic crime goes to the truthfulness of that individual. No expert witness was presented by the State to substantiate Ms. Stockman's lay opinion; nor were any statistical studies or treatises presented. The testimony of one lay witness, without more, is insufficient to support a factual finding of this nature. Nonetheless, assuming, without deciding, that the State met its threshold burden of proving that Hopkins' prior conviction was relevant to his propensity for truthfulness, the final hurdle to be cleared before declaring Hopkins' prior conviction admissible for impeachment is an on-the-record balancing of the five Peterson factors, to wit:
1) impeachment value of the prior offense;
2) date of the prior conviction;
3) similarity between the past and presently charged offenses;
4) importance of defendant's testimony; and
5) whether credibility is central.
The impeachment value of Hopkins' prior offense depends upon the weight given to Janice Stockman's testimony. Touching a child for lustful purposes does not, of itself, relate to credibility and would have little bearing on the veracity of Hopkins except for the fact that Ms. Stockman testified that he was a known pedophile and that pedophiles share a characteristic of untruthfulness because they tend to deny commission of their offenses. The judge below stated on the record that he found pedophiles share a characteristic of untruthfulness, apparently giving great weight to Ms. Stockman's testimony. Although we find the trial court's blind reliance on one lay opinion manifestly wrong in a factual determination of this nature, we will assume, arguendo, that sufficient evidence had been presented to the trial court to support a finding that pedophiles are generally untruthful. Impeachment value of the prior conviction would, therefore, weigh in favor of admissibility.
The second factor weighs against admissibility. Hopkins' conviction was seven years old at the time of the trial below.
The third consideration, similarity, weighs heavily against admissibility. As both crimes were sexual offenses against children it was quite likely that the jury would believe "if he did it before he probably did it this time." Based on this factor, admission of Hopkins' prior conviction would be incredibly prejudicial.
The importance of Hopkins' testimony weighs in favor of admissibility. Although his son, James Hopkins, was said to have been an eyewitness and his statement was admitted into evidence, Hopkins' (the defendant's) testimony alone could support his theory of the case. [James initially said in a statement that he had seen Hopkins performing oral sex on the alleged victim, who was a friend of James, in his (James') bedroom. At trial James recanted and said he and his friend had made up the story so James could go and live with his friend. Hopkins' story was that he woke up in his own bed because something was choking him and he heard giggling and sniggering.]
*1254 As Hopkins' defense depended heavily upon his own credibility, evidence bearing on his credibility was crucial. This weighs in favor of admissibility of the prior conviction, but only to the extent that it reflected adversely on his credibility. Again, the weight given to Ms. Stockman's testimony is determinative. Even resolving all doubt in favor of the State, which we are not required to do, and giving the trial court every deference, i.e., taking Ms. Stockman's testimony as fact, the similarity between the two crimes would prevent admissibility because of the manifest prejudice it would impose on Hopkins.[3] As the trial court did perform an on-the-record balancing of the Peterson factors, it is not necessary to remand for this purpose.

M.R.E. 609(a)(2)
Part (a)(2) allows crimes involving dishonesty to be admitted without discretion on the part of the trial court, subject only to the time limit of M.R.E. 609(b). Johnson v. State, 529 So.2d 577, 586 (Miss. 1988), Johnson v. State, 525 So.2d 809, 811 (Miss. 1988). The Comment to Rule 609 states that the type of crimes in part (a)(2) are those such as perjury, fraud, and the like, offenses "in the nature of crimen falsi, the commission of which involves some element of deceit, untruthfulness, or falsification bearing on the accused's propensity to testify truthfully." Since touching a child for lustful purposes does not require an element of deceit, the past conviction at issue here is not admissible under Rule 609(a)(2).

Motion in Limine
The trial court denied Hopkins' motion in limine. Such motions should be granted only when the trial court finds two factors are present: the evidence in question will be inadmissible at trial under the rules of evidence and that mere offer, reference, or statements made during trial concerning the evidence will tend to prejudice the jury. Whittley v. City of Meridian, 530 So.2d 1341, 1344 (Miss. 1988). Hopkins' motion in limine should have been granted. Evidence of his prior conviction should have been inadmissible at trial pursuant to M.R.E. 609(a)(1) because it was manifestly prejudicial and mere reference to the conviction during trial would prejudice the jury irreparably. Accordingly, we reverse and remand.
REVERSED AND REMANDED TO THE CIRCUIT COURT OF LOWNDES COUNTY FOR NEW TRIAL.
HAWKINS, C.J., DAN M. LEE, P.J., and BANKS and McRAE, JJ., concur.
BANKS, J., concurs with separate written opinion joined by DAN M. LEE, P.J., and PITTMAN, J.
SMITH, J., dissents with separate written opinion joined by JAMES L. ROBERTS, Jr., J.
PRATHER, P.J., not participating.
BANKS, Justice, concurring:
Because I agree that the prejudicial effect of the conviction in question manifestly outweighs any probative value that it may have as to the defendant's credibility, I agree that his conviction must be reversed. I write separately only to make clear my adherence to the views I expressed in Tillman v. State, 606 So.2d 1103, 1108 (Miss. 1992) (Banks, J., Concurring in part and dissenting in part), regarding whether any felony is bereft of probative value on the issue of credibility and those expressed in Settles v. State, 584 So.2d 1260, 1264 (Miss. 1991), regarding the proper application of the factors in Peterson v. State, 518 So.2d 632 (Miss. 1987).
Specifically, I believe that any felony is per se probative on the issue of truthfulness. There are felonies, however, which have so little to do with the trait of truthfulness that *1255 the smallest amount of prejudice would almost certainly outweigh their probative value. There are other felonies so facially prejudicial that in almost all instances prejudice outweighs probative value. Child molestation is one such felony. Moreover, in any instance where the previous conviction is of a crime similar to the one charged and under consideration, the potential for undue prejudice is great. It follows that here where you have a child sexual abuse conviction and a charge under consideration of sexual molestation the potential for unfair prejudice is multiplied.
As to application of the Peterson factors, I continue to believe that factors 4 and 5 cancel each other out. Settles v. State, 584 So.2d 1260, 1264 (Miss. 1991). Where, as here, the defendant's testimony is so important to his defense, inhibiting the decision to testify by the prospect of opening the door to grossly prejudicial information is to be avoided. Id.[1] On the other hand, where the testimony of the defendant is so essential, his credibility is central. Factor two could really be folded in to factor one because it involves other aspects of impeachment value. Factors one and three, then, are the key ones.
Applying those factors here, a prior conviction for child molestation has only minimal impeachment value as it relates to general credibility. Even the lay testimony credited here by the trial judge would not dispute that fact. That testimony was to the effect that pedophiles are reluctant to admit it. Indeed, so are others who may have engaged in conduct, criminal or non-criminal, held in contempt, virtually unanimously, by society. The fact that a particular crime is one that few would willingly admit committing adds not at all to the relationship between the offending conduct and the trait of truthfulness. On the other hand the contemptible nature of this crime is such that it would almost certainly prejudice unfairly the defendant in the eyes of the jury. This is all the more to be assumed when we consider that the crime charged is similar to the previous offense, the factor enumerated 3 in Peterson.
DAN M. LEE, P.J., and PITTMAN, J., join this opinion.
SMITH, Justice, dissenting:
The admissibility of the prior conviction to the limited extent that it reflected adversely on Hopkins' credibility was properly allowed by the trial court. Any similarity between Hopkins' prior crime and the crime in this case is strictly that they were both committed against children. They are separate and distinct crimes and in no way could one be considered a lesser included offense of the other. The trial court conducted an on-the-record balancing of the Peterson factors, and correctly denied Hopkins' motion in limine. I am compelled to take exception with the majority.
I agree that the only issue requiring discussion is the admissibility of Hopkins' prior conviction, allowed in for limited consideration for credibility and impeachment purposes. Hopkins, prior to trial, by motion in limine, sought to prohibit the introduction of his 1983 conviction. The trial court ruled that evidence of the prior conviction had more probative value than prejudicial effect, and that it could only be used in rebuttal for credibility and impeachment purposes.
Hopkins' trial strategy was to establish that he was a good father, treated his three adopted sons very well, had a great love and interest in children, and most definitely, would never abuse a child. In addressing this theme of his defense, Hopkins offered the testimony of his sons, James and Joe Hopkins, who both testified about Charlie Hopkins' wonderful relationship with his children. They had never known Charlie Hopkins to abuse anyone, even though they were both living with Charlie in 1983, when the first crime and conviction of molestation of R.S. was said to have occurred. Hopkins clearly put his credibility in issue through his two sons' testimony as to his character traits of maintaining an excellent relationship with his children and of not ever abusing children.
Hopkins testified to having been convicted of a felony. The bulk of his testimony was focused upon his son James, and why James *1256 would have given false statements to law enforcement officers that Charlie abused T.B. However, on cross-examination without objection, Charlie was asked specifically of what felony he was convicted in 1983. To this question he replied that he was convicted of fondling. Whereupon the prosecutor correctly questioned, "Touching a child for lustful purposes is I think  ", and was promptly interrupted by Charlie who responded, "Yes sir." This ended the discussion about the prior conviction.
Hopkins' issue before this Court hinges upon the Peterson factors requiring a balancing test of probative versus prejudicial factors before evidence of a prior conviction may be introduced into evidence under Rule 609, Mississippi Rules of Evidence. Peterson v. State, 518 So.2d 632 (Miss. 1987). A review of the record clearly shows the learned trial judge to be keenly aware of this precedent setting case. He conducted an on-the-record Peterson analysis, applying the required balancing test.
In considering first the impeachment value of the prior crime, the testimony of Janice Stockman was apparently strongly relied upon by the trial judge. Ms. Stockman, a social worker with more than 23 years experience, testified that she worked both with abused children and child abusers. She stated that both she and her department were aware for several years that Charlie Hopkins was a pedophile. She testified that in her experience pedophiles were untruthful about their crimes, making excuses and reasons, but never admitting, "Yes, I did this." It is rather obvious, as shown by the trial judge's comments on the record, that this testimony met the burden required of the State to establish prima facie that the prior conviction has probative value as required by McInnis v. State, 527 So.2d 84, 88 (Miss. 1988). More importantly, although he now complains, Hopkins failed to object to Ms. Stockman's testimony at trial. How can he now complain for the first time? This Court has repeatedly held that "if no contemporaneous objection is made, the error, if any, is waived." Fleming v. State, 604 So.2d 280, 294 (Miss. 1992); Cole v. State, 525 So.2d 365 (Miss. 1987), cert. denied, 488 U.S. 934, 109 S.Ct. 330, 102 L.Ed.2d 348 (1988); Johnson v. State, 477 So.2d 196 (Miss. 1985), cert. denied, 476 U.S. 1109, 106 S.Ct. 1958, 90 L.Ed.2d 366 (1986).
The majority also is concerned that Ms. Stockman was not an expert, nor were any treatises or statistical studies presented. Ms. Stockman's credentials obviously qualified her to have been considered as an expert in her field. The fact that the prosecutor did not offer her as an expert is of no great concern. The trial judge obviously felt she was immensely qualified and knew what she was talking about. Though he complains, Hopkins failed to object to her testimony.
Secondly, as to the point in time of the prior conviction as compared to the time of this alleged incident, the trial judge noted only six years had elapsed from the former to the latter. This was well within the ten year limit set by Rule 609(b).
In addressing the third factor of similarity of the prior crime and the charged crime herein, the trial court noted that while both offenses are crimes against children, they are clearly two separate crimes requiring separate punishment. This Court has dealt with this issue previously in Hailey v. State, 537 So.2d 411 (Miss. 1988). In Hailey, the Court held that the two crimes had separate elements and that one was not a lesser included offense of the other, clearly recognizing the difference. The Court reversed the conviction of Hailey, who had been adjudged guilty by a jury of fondling as a lesser offense under an indictment charging rape. In the case sub judice, the same analogy applies as in Hailey. The elements of sexual battery in this case and fondling in the prior conviction do not bear any more similarity than did the elements of rape and fondling in Hailey. More importantly, the two crimes are not so similar that "the jury was very likely to infer present guilt from a past conviction." Peterson, 518 So.2d at 637.
The fourth Peterson factor is the importance of the defendant's testimony. Hopkins relies on Johnson v. State, 525 So.2d 809 (Miss. 1988). However, in this case we do not have a situation of only a victim's word against the defendant's word, as existed in Johnson. Hopkin's son James testified as an *1257 eyewitness to the alleged incident, claiming that he and the victim had made up the whole story so that James could move out of Charlie's house and into the victim's house. Obviously this testimony presents a credibility issue for the jury, but it certainly lessened the importance of the defendant's testimony.
The credibility of Hopkins' testimony as gauged by the jury is another matter altogether. His testimony was filled with major discrepancies, inconsistencies and contradictions between statements he made to law enforcement officers previously as compared to his testimony at trial. The effect on the jury of a prior conviction, admitted for limited purposes and consideration, pales when compared to his contradictions in testimony. The jury obviously placed little, if any, credibility on Charlie Hopkins' testimony.
Finally, the trial court in addressing the centrality of the credibility issue in the case sub judice, found itself in a similar posture as the trial judge in Peterson. The Peterson Court, in examining factor four, found the defendant's testimony to be important since he was the only witness; hence this weighed against admissibility of a prior conviction. Yet, when examining factor five, the Court found his alibi defense would stand or fall on Peterson's own credibility, and that this weighed in favor of the admission of the prior crimes. Hindsight is sometimes easy for appellate judges, but not as easily detected by the trial judge is the importance of trial testimony and potential appellate issues. The trial judge is compelled to decide quickly the importance of issues, and this trial judge made a valid, good faith on-the-record effort to do just that.
The trial judge's Peterson analysis and determination was proper and adequately complied with our precedent cases. The majority cites McGee v. State, 569 So.2d 1191, 1195 (Miss. 1990), a case not even cited by Hopkins, yet readily discoverable. The Court reversed the conviction in McGee because evidence of a prior felony was introduced without a Peterson hearing, not because of follow up cross-examination by the State. In the case sub judice, Hopkins' response to his attorney's question regarding whether he had been convicted of a felony was a simple "yes", but he did not respond as to what type of felony he was convicted. The obvious question arises: Is the prosecution required to leave a jury wondering what felony had been committed, when the issue is first raised by the defendant himself? Absolutely not. This is standard, routine, and expected cross-examination by the state. The trial strategy of the defense was to establish by the testimony of the defendant's two sons that they had never been abused by their father, nor were they aware of any other child who had been abused by Charlie Hopkins. They further testified that Charlie was a wonderful father who would never harm a child. The magnitude of this wide open door left by the defense for the State to walk through was obvious. This testimony borders on what it actually was deceit at worst, or at best, left the jury with a false impression, if left unchallenged. By taking the stand and raising this issue through his own testimony and that of his two sons, Hopkins opened the door to allow proper rebuttal by the state. Davis v. State, 530 So.2d 694, 699 (Miss. 1988); Simpson v. State, 366 So.2d 1085, 1086 (Miss. 1979).
Under Rule 609, when taken seriously as this Court has stated the rule should be, the State was clearly entitled to let the jury hear all of the evidence. The trial judge made a bona-fide, on-the-record analysis of Peterson factors and determination thereof, based on the facts of this particular case. Admission of Hopkins' 1983 conviction for the limited consideration of credibility and for impeachment purposes on rebuttal was properly allowed by the trial judge.
The trial court did not commit error and should be affirmed. I respectfully dissent.
JAMES L. ROBERTS, Jr., J., joins this opinion.
PRATHER, P.J., not participating.
NOTES
[1] The present version of F.R.E. 609(a), effective December 1, 1990, states,

(a) General Rule. For the purpose of attacking the credibility of a witness,
(1) evidence that a witness other than an accused has been convicted of a crime shall be admitted, subject to Rule 403, if the crime was punishable by death or imprisonment in excess of one year under the law under which the witness was convicted, and evidence that an accused has been convicted of such a crime shall be admitted if the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the accused; and
(2) evidence that any witness has been convicted of a crime shall be admitted if it involved dishonesty or false statement, regardless of the punishment.
[2] The trial judge made no mention whatsoever on the record of the State's threshold burden of establishing prima facie that the prior conviction has probative value. Instead, he plunged right into the prejudicial versus probative balancing.
[3] Because our decision to reverse is based on the overshadowing of any probative value of Hopkins' prior conviction by its manifestly prejudicial effect, we need not determine what weight should have been given Ms. Stockman's testimony by the trial court nor what additional evidence would have sufficed to support the finding that untruthfulness is a natural characteristic of pedophiles. We do, however, take this opportunity to remind our trial courts that prior to an on-the-record balancing of the Peterson factors for purposes of M.R.E. 609(a)(1), the proponent of the evidence must make a prima facie showing that the prior conviction is relevant to the witness' propensity for truthfulness.
[1] This runs counter to the majority assertion that the importance of Hopkins' testimony favors admissibility of the impeaching information. Majority opinion, ante, p. 1253.