# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 94-CT-01044-SCT

*JASPER HALL*

*v.*

*STATE OF MISSISSIPPI*

### ON PETITION FOR WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 9/15/94 |
| TRIAL JUDGE: | HON. HOWARD Q. DAVIS |
| COURT FROM WHICH APPEALED: | SUNFLOWER COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | P.J. TOWNSEND, JR. |
| | ROBERT L. HOLLADAY |
| | JOHN H. MCWILLIAMS |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: PAT S. FLYNN |
| DISTRICT ATTORNEY: | NA |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 3/13/97 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 4/7/97 |

**EN BANC.**

**SULLIVAN, PRESIDING JUSTICE, FOR THE COURT:**

## Introduction

¶1. This matter comes before the Court, en banc, after granting petitioner's application for writ of certiorari. Jasper Hall was convicted of two counts of capital rape in the Circuit Court of Sunflower County, Mississippi, for the rape of his nine year-old daughter, and sentenced on each count to life in the custody of the Mississippi Department of Corrections, with the sentences to run concurrently, but consecutively to a prior sentence for which parole had been revoked.

¶2. The Court of Appeals affirmed the lower court's decision on September 17, 1996, Coleman, J., and the petition for rehearing was denied on December 3, 1996. The petition for writ of certiorari

was filed with this Court on December 9, 1996, and granted on January 23, 1997.

¶3. The following issues were raised for certiorari review: I. The trial court erred by allowing into evidence the opinion testimony of Rebecca Patton as to the truthfulness of the alleged victim; II. The trial court erred by admitting into evidence, and allowing Doctors Aquino and Hampton to testify from a photograph of L. R.'s vagina, taken one and one-half years after the alleged rape incident [exhibit S-3]; and III. The trial court erred in not permitting testimony from Brenda Hall that impeached her daughter's testimony.

¶4. Issues I and II presented for review are found to be without merit. On issue III, the Court of Appeals' analysis does not comport with published case law of this Court, although the lower court's error was harmless error, and therefore, the lower court's decision is affirmed.

### Facts

¶5. Hall was convicted of raping his nine year-old daughter on Thanksgiving night, 1992. L. R. testified that she was living with her daddy (the defendant), her mother and her younger brother at the time. They went to her grandmother's house for Thanksgiving dinner and, sometime during the day, both her mother and father left separately. Jasper Hall returned alone, got L. R. and her brother, Scubby, and took them home. Her mother was not there.

¶6. L. R. and Scubby slept with Hall in his bed because he could not get the heater lit in her room. Scubby was in the middle, but sometime during the night Hall moved Scubby over and put himself next to L. R. She said they talked for a while about Christmas. She testified that he told her, "Let's do it." "Do what?" "You know." "I don't know." "Yes, you do." [1]

¶7. L. R. said that her father pointed a knife to the top of her chest and told her she would do it and that if she told anyone he would kill her. At that point, Scubby said, "I'm going to tell." Hall told him that he would kill him too. L. R. testified that Hall put "his penis in my virginis." She said she started to cry and push his body because "it hurted." After he raped her on the bed, he took her into the bathroom, put her "straddle of his lap and did it again." Then they went back to bed. L. R.'s mother came in about 12:30 a.m.; L. R. did not say anything to her mother. The next day they went back to her grandmother's house. The grandmother, Clemmie Davis, was told by Scubby what had happened. She asked L. R. about it. At first L. R. would not tell here because "I wasn't ready to die and I wasn't ready for Scubby to die either," but finally she admitted that "what Scubby said " had happened.

¶8. After a hearing on reliability as required by the Mississippi Rule of Evidence 803(25), Clemmie Davis testified that L. R. had reluctantly told her what had happened with Hall. She was unable to get the child to the doctor until Monday morning, when she took her to Dr. Aquino. Dr. Aquino testified that L. R. had redness in the vaginal area with a superficial tear in the inner vaginal canal. He said the area was very tender and she would not let him examine her throughly enough to see the hymen, she was in severe pain. Dr. Aquino took a medical history in which L. R. told him that her father had put his penis inside her.

¶9. Hall's wife, Brenda, testified that she was there with Hall and the children all night that Thanksgiving night. However, on rebuttal, the State put Brenda's sister and her mother on to testify that Brenda was not with Hall and the children that night and that Hall was looking for Brenda after

he picked the children up from the grandmother's house. Mary Ann Crook was also brought back to testify that Brenda admitted to her that she was not at home that night.

¶10. After hearing the evidence, the jury convicted Hall of two counts of capital rape.

## Issues presented for certiorari review

**I. THE TRIAL COURT ERRED BY ALLOWING INTO EVIDENCE THE OPINION TESTIMONY OF REBECCA PATTON AS TO THE TRUTHFULNESS OF THE ALLEGED VICTIM.**

**II. THE TRIAL COURT ERRED BY ADMITTING INTO EVIDENCE, AND ALLOWING DOCTORS AQUINO AND HAMPTON TO TESTIFY FROM A PHOTOGRAPH OF L. R.'S VAGINA, TAKEN ONE AND ONE-HALF YEARS AFTER THE ALLEGED RAPE INCIDENT [EXHIBIT S-3].**

**III. THE TRIAL COURT ERRED IN NOT PERMITTING TESTIMONY FROM BRENDA HALL THAT IMPEACHED HER DAUGHTER'S TESTIMONY.**

## Analysis and Authority

### I.

¶11. Hall argues that the trial court erred by allowing into evidence the opinion testimony of Rebecca Patton as to the truthfulness of the alleged victim. Rebecca Patton was the State's expert witness, and Hall complains that Patton testified she was "absolutely certain beyond a reasonable doubt" that L. R. was telling the truth and that her statements were " . . . very symptomatic of a child telling the truth." [2] Ms. Patton gave this testimony on re-direct after she had been questioned on cross-examination about L. R.'s truthfulness. Patton's first mention of L. R.'s truthfulness came on cross-examination, in response to a question from the defense attorney. The defense opened the door to the questions asked and the answers given on re-direct. In addition, there was *no objection* to this testimony at trial. The Court of Appeals relied on *McQuarter v. State*, 574 So. 2d 685, 687-88 (Miss. 1990) in holding that because counsel did not object to this part of Patton's testimony, the issue was waived. This Court held:

> Unless timely and specific objection is made to allegedly improper testimony, the objection is deemed waived and may not be raised on appeal. *Singleton v. State*, 518 So. 2d 653 (Miss. 1988); *Parker v. State*, 367 So. 2d 456 (Miss. 1979). Such was not done here. Consequently, McQuarter's complaint has not been preserved for review on appeal. *See Crawford v. State*, 515 So. 2d 936 (Miss. 1987).

*Id.* at 688.

¶12. This issue is without merit under the authority of *McQuarter,* and additionally, the defense clearly opened the door to the questions asked and the answers given on re-direct--in all probability counsel did not object to the testimony because he knew he had opened the door.

### II.

¶13. Hall also argues that the trial court erred by admitting into evidence and allowing Doctors Aquino and Hampton to testify from a photograph of the victim's vagina, taken one and one-half years after the alleged rape incidents. In *Chase v. State*, 645 So. 2d 829 (Miss. 1994), this Court affirmed the trial court's introduction into evidence of two pictures of a murder victim over the Appellant's objection *Id.* at 848. We held:

> As a general rule, the admissibility of photographs into evidence is within the sound discretion of the trial judge. The trial judge's decision will be upheld on appeal unless an abuse of discretion can be shown.

*Id.* at 848-49 (citations omitted).

¶14. After the court's examination and defense counsel's cross-examination of Dr. Hampton, the trial judge ruled:

> Well I think the photograph may be distasteful but this type of case is distasteful and you don't like to think of a child's genital area being displayed to the world by way of photograph but there's certainly no way other than the case number and name to identify what this photograph may be; and if the doctor says it's going to assist her in . . . her explaining her testimony, I don't see why it's not admissible, therefore, I'll overrule the objection.

¶15. Mississippi Rule of Evidence 401 defines "relevant evidence" as follows:

> [E]vidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

¶16. Mississippi Rule of Evidence 702 allows expert testimony such as that of Dr. Hampton whom the State offered, "[i]f scientific, technical, or other specialized knowledge *will assist the trier of fact to understand the evidence* or to determine a fact in issue. . . . " M.R.E. 702 (emphasis added).

¶17. The trial court found that "if the doctor says it's going to assist her in her . . . her explaining her testimony, I don't see why it's not admissible." The doctor had said in answer to the question of whether the injury to the vagina could be explained logically without the use of the photograph: "It's been my opinion that the picture is helpful in previous cases but I think it would be difficult for me to simply describe things without some form of visual aid because most people don't understand anatomy." In light of M.R.E. 401 and 702, it would appear that the trial court did not abuse its discretion in allowing the photograph into evidence, and this issue is without merit.

### III.

¶18. Jasper Hall also asserts that the trial court erred in not permitting testimony from Brenda Hall that impeached her daughter's testimony. The State called L. R. as its first witness. During Hall's cross-examination of her, the following testimony appears in the record:

> Q. And do you remember telling your mother that your father had not bothered you?
>
> A. No, sir.

Q. You don't remember telling her that?

A. (Witness indicated no by moving her head from side to side).

¶19. Later, Brenda Hall, L. R.'s mother testified for Hall. Counsel for Hall asked Brenda Hall the following question, to which she gave the following answer:

Q. All right. Now have you tried to discuss with [the victim] what she said happened between her and her father?

A. It was just only one time because my mother never did let me get close to her just one time. Me and her was going down the road to this man that sells pops and cookies and stuff down there, and me and her was walking down the road and she told me she didn't say anything like that.

¶20. The trial judge sustained the State's objection to Brenda Hall's answer on the ground that it was hearsay. Hall's counsel argued, "Judge, this is a statement made by the victim." The judge responded that the victim is not a party, and Hall's counsel responded, "I understand but everybody else was testifying [as to ]what the victim said." The Court of Appeals found that this was Hall's only attempt to justify the statement's admission into evidence . The Court of Appeals stated that Hall did not tell the judge that Brenda Hall's testimony about what her daughter had told her should be admitted as impeachment of L. R.'s earlier testimony. Hall relies on *Harrison v. State*, 534 So. 2d 175, 179 (Miss. 1988) to support his assertion that "[t]he evidence of such statement was being offered 'as circumstantial evidence from which the jury could infer that the trial testimony [of L.R.'s ] was unreliable.'" He then concludes that the offered statement "does not even meet the definition of hearsay."

¶21. The State argued first, that Hall failed to question L. R. about whether she made the statement to her mother. This Court required such examination as a predicate to introduce hearsay statements for impeachment purposes in *Whigham v. State*, 611 So. 2d 988, 994-95 (Miss. 1992). The Court of Appeals found that "the portion of Hall's cross-examination of L.R. which we earlier quoted satisfies this Court that he did question her sufficiently to lay a predicate for questioning Brenda Hall about what L.R. told her when they were walking down the road to the store where the man sold pop and cookies."

¶22. The State argues secondly that Hall failed to make a proffer of what Brenda Hall's testimony would have been. The State cites *Whigham v. State*, 511 So. 2d 144, 147 (Miss. 1987). The Court of Appeals noted, however, that this Court has held that, "Where a party is improperly denied cross-examination, he is not required to make a proffer of the witness' testimony such as otherwise would be required, as we have so held on several recent occasions." *Suan v. State*, 511 So. 2d 144, 147 (Miss. 1987).

¶23. The Court of Appeals noted firstly that Hall's counsel did not advise the trial court that he sought to introduce Brenda Hall's testimony to impeach L.R.'s testimony. This Court of Appeals employed the following maxim implicit in the Federal Rules of Evidence to resolve Hall's issue:

In making an offer of proof counsel must be careful to articulate every purpose for which the

evidence is admissible; a purpose not identified at the trial level will not provide a basis for reversal on appeal.

I Jack B. Weinstein *et al., Weinstein's Evidence* p. 103-36 (1996); and *see Hopkins v. State*, 639 So. 2d 1247;, 1250 (Miss. 1992).[(3)]

¶24. Additionally, the Court of Appeals cited the United States Court of Appeals for the Seventh Circuit in *Huff v. White Motor Corp*., 609 F. 2d 286 (7th Cir. 1979) :

. . . . When an objection identifies the rule of evidence on which admission or exclusion depends, the proponent ordinarily need not do more to preserve error than offer the evidence. But when the objection, hearsay in this case, does not focus on the specific issue presented on review . . . error is not preserved unless the proponent alerts the trial court to that issue. This is in accord with the general principle that to preserve error in a ruling on evidence a party must notify the trial court of his position and the specific rule of evidence on which he relies.

*Id.* at 290 n.2.

¶25. The COA found that Hall's counsel did not alert the trial judge to the issue of impeaching L. R.'s testimony that her father had engaged in sexual intercourse with her-- the reason which Hall gave to support the admissibility of Brenda hall's statement was that "[E]verybody else was testifying what the victim said." Therefore, the COA declined to find that the trial judge erred when he excluded Brenda Jones' testimony on the ground that it was hearsay in the absence of Hall's counsel informing him of the exact reason that he wished to introduce this testimony, which was to impeach L. R.'s testimony. It appears that the Court of Appeals's analysis did not comport with our case law.

¶26. The basis for the court's ruling with regard to the admission of this statement was that it violated the rule against hearsay. This ruling was in error because L. R.'s prior inconsistent statement was not being " . . . offered in evidence to prove the truth of the matter asserted." M.R.E. 801(c). The evidence of such statement was being offered " . . . as circumstantial evidence from which the jury could infer that the trial testimony [of L. R.] was unreliable." *Harrison v. State*, 534 So. 2d 175, 179 (Miss. 1987); M.R.E. 607. Hence, the offered statement does not meet the definition of hearsay, and the trial court and Court Of Appeals erred in classifying it as such.

¶27. Rule 613(b) of the Mississippi Rules of Evidence governs the admissibility of prior inconsistent statements offered for impeachment purposes. It provides in pertinent part, as follows:

Extrinsic evidence of a prior inconsistent statement is not admissible unless the witness is afforded an opportunity to explain or deny the same and the opposite party is afforded an opportunity to interrogate him thereon, or the interests of justice otherwise require.

¶28. The rule in Mississippi is that such testimony is admissible in evidence under Rule 613(b) provided that a proper foundation is laid. *Whigham v. State*, 611 So. 2d 988 (Miss. 1992). In the case at bar, a proper foundation was established when L. R. was asked:

Q. All right. Now . . . now do you recall one day you and your mother walking down the road and having a conversation; you remember that?

A. (Witness nodded affirmatively).

Q. And do you remember telling your mother that your father had not bothered you?

A. No sir.

Q. You don't remember telling her that?

A. (Witness indicated no by moving head from side to side).

¶29. For these reasons, Brenda Hall's statement should have been allowed into evidence. Counsel for Jasper Hall queried Brenda Hall:

Q. All right. Now have you tried to discuss with L. R. what she said happened between her and her father?

A. It was just only one time because my mother [L. R.'s grandmother] never did let me get close to her just one time. Me and her was going down the road to this man that sells pops and cookies and stuff down there, and me and her was walking down the road and she told me she didn't say anything like that.

¶30. This was the one sentence excluded from evidence. Of course, L. R. did not have the opportunity to respond to her mother's assertion. There are two additional observations to be addressed concerning the above error.

¶31. Firstly, L. R. said she did not *remember* telling her mother that her father had not bothered her. The Federal Courts are not in agreement on whether a mere lack of memory can be impeached. *U.S. v. Grubbs*, 776 F. 2d 1281, 1287 (5th Cir. 1985). It appears that the Second and Eighth Circuits leave the question of whether a lack of memory is an inconsistency to the judge's discretion. *Id.* The Fifth Circuit, however, has held "that faulty memory does not constitute an inconsistent statement." *Id.*

¶32. But in Mississippi, prior to the enactment of the rules, our Supreme Court has held that where a witness claims not to recall making a statement, the witness' lack of recognition is essentially a denial. *See Magness v. State*, 106 Miss. 195, 63 So. 352 (1913). This Court stated that when a witness is given an opportunity to admit or deny the making of a statement, as he must be, his refusal to admit or deny making the statement opens the door for impeachment. 106 Miss. at 198, 63 So. 352. Under the Mississippi Rules of Evidence this approach is most consistent with the rules of relevancy, and with the "development of the law of evidence to the end that the truth may be ascertained and proceedings justly determined." M.R.E. 102.

When a witness fails in any manner to acknowledge the making of a statement, the impeacher is obligated to offer proof establishing the making of that statement, assuming of course, that the issue is relevant. The trier of fact must have a valid means to decide whether the witness' lack of recollection is anything more than a "refuge." By being apprized of this prior statement, the trier has such a means.

*Harrison v. State,* 534 So. 2d 175, 180 (Miss. 1988).

¶33. Therefore, under the authority of *Harrison*, and as correctly argued by Hall, this evidence should

have been allowed into evidence.

¶34. A review of this record and the evidence shows that the admission of this one sentence spoken by Brenda Robinson Hall would not have affected the outcome of this trial. It appears that the alleged impeachment of L. R. would have been rather insignificant, in light of all the statements she made to the contrary to others; that Brenda Hall's credibility was significantly impeached in other areas, i.e., claiming that she was at home when the incident occurred, when in fact, testimony established that she left her mother's home in mid-afternoon on Thanksgiving day, that Jasper Hall picked up the children and took them home, and that Brenda did not return home until the 12:30 a.m. the day after Thanksgiving. Three witnesses, Brenda's sister, mother, and Mary Ann Crook testified that Brenda was not at home that night. Additionally, the evidence supporting conviction was significant. Therefore, the trial court's error was harmless error. The Court of Appeals reached the correct conclusion in affirming the trial court's conviction, but its analysis was incorrect concerning this issue.

¶35. AFFIRMED.

**PRATHER, P.J., PITTMAN, BANKS, McRAE, ROBERTS, SMITH AND MILLS, JJ., CONCUR. LEE, C.J., CONCURS IN RESULT ONLY.**

1. L. R., who was testifying by closed circuit television, could not give this testimony orally, so she wrote it down and it was read by the assistant district attorney.

2. Hall is taking this latter quote somewhat out of context; Ms. Patton testified that L.R. had never changed her story about the rape throughout her twenty-eight hours of therapy and that this was very symptomatic of a child telling the truth.

3. Though a few differences exist, the Mississippi Rules of Evidence are generally the same as the Federal Rules of Evidence. In construing the Mississippi Rules of Evidence, this Court has generally cited federal case law which interpreted the federal rule corresponding with the Mississippi rule of Evidence at issue in the case. *See generally , Johnson v. State,* 529 So. 2d 577, 587 (Miss. 1988). *Hopkins* at 147.